[No. 30118.   Department Two.   December 30, 1947.]

JOHN J. HAWKINS, *Appellant*, v. GERTRUDE C. PALMER
*et al., Respondents.*[1]

[1]Reported in 188 P. (2d) 121.

*Pemberton & Orloff,* for appellant.

*John D. MacGillivray,* for respondents.

ROBINSON, J.—The appellant, driving south from Ferndale to Bellingham at three-thirty or four a. m. on September 23, 1945, discovered that a Mr. and Mrs. Thorpe had been injured when the motorcycle they were riding collided with an automobile. They were lying on the west side of the road, she entirely off the pavement and he with his feet on the paved portion of the highway and his body lying at right angles to the pavement and across the shoulder which flanked the pavement at that point.

Discovering that their injuries were critical and that an ambulance and medical aid were needed immediately, he drove to Bellingham and requested the police to send out an ambulance. He then returned to see if he could be of any further assistance and found several cars parked on the east side of the road. He drove past two cars which were parked, partially on the shoulder of the road, just opposite the place where Mr. and Mrs. Thorpe were lying. (It should be noted that the pavement was twenty feet in width, with a four-foot-ten-inch shoulder on each side.) Appellant testified that he parked ahead of the two cars referred to and behind two or three others.

In the meantime, the ambulance belonging to respondent Gertrude C. Palmer (and covered by insurance issued by respondent United Pacific Insurance company) had arrived and had stopped with the rear door opposite Mr. Thorpe's feet. (This was not a regular ambulance with a door at the back, but was a seven-passenger Chrysler sedan in which a stretcher could be placed.) The stretcher had been placed parallel to and north of Mr. Thorpe, and, when the appellant returned after parking his car, the ambulance driver and a man who had come with him were on the south

side of Mr. Thorpe, endeavoring to lift him onto the stretcher. While the appellant was endeavoring to assist them, a car driven by Floyd N. Peterson came through from the north, sideswiped the ambulance and hit the stretcher, Mr. Thorpe, and the men standing beside him, and seriously injured the appellant. (Both Mr. and Mrs. Thorpe died as a result of the injuries they had sustained.)

We are not here concerned with Mr. Peterson's negligence, if any, because he is not a party to this action. Appellant's theory is that respondent Palmer's employees were negligent (1) in stopping the ambulance partially on the west (its left) side of the highway; (2) in not leaving

". . . at least one half of the width of such roadway . . . clear and unobstructed for the free passage of other vehicles . . ." Rem. Rev. Stat., Vol. 7A, § 6360-110 [P.P.C. § 295-71];

(3) in not putting out flares or giving adequate warning that the ambulance was stopped on the highway; and (4) in leaving the headlights of the ambulance on high beam, thus blinding Mr. Peterson as he approached from the north.

The applicability of the statutory provisions relied on by appellant as applied to an ambulance on an emergency call are not discussed in the briefs. Rem. Rev. Stat., Vol. 7A, § 6360-5 [P.P.C. § 276-35], states that they shall not apply

". . . (a) To any authorized emergency vehicle properly equipped as required by law and actually responding to an emergency call or in immediate pursuit of an actual or suspected violator of the law, within the purpose for which such emergency vehicle has been authorized: *Provided,* That the provisions of this section shall not relieve the operator of an authorized emergency vehicle of the duty to operate with due regard for the safety of all persons using the public highway nor shall it protect the operator of any such emergency vehicle from the consequence of a reckless disregard for the safety of others: . . ."

It may be that there was a question as to whether the ambulance involved here was an "authorized emergency vehicle properly equipped as required by law"; or Rem. Rev. Stat., Vol. 7A, § 6360-5, may have been regarded as imma-

terial by reason of the grounds of the decision of the trial court. In any event, we desire it to be understood that this section of the law has been disregarded for the purposes of this decision.

Whether the ambulance was slightly over the center line of the highway and whether its lights were on high beam, were disputed questions of fact. There was also conflict over whether appellant was specifically asked to assist in lifting Mr. Thorpe or volunteered in response to a request for assistance directed to all bystanders, and also, whether he was facing north or south when hit by the Peterson car. It is conceded that the ambulance driver and his assistant did not put out any flares or attempt to give any warning of the fact that the ambulance was stopped on the roadway; but there was evidence that there were people with flashlights both north and south of the place where the ambulance was stopped, to flag down traffic, so there would have been a question of fact as to whether or not the men with the ambulance were justified in failing to take any other precautions. Mr. Peterson testified that he did not see anyone with a flashlight and that he was blinded by the headlights of cars facing him, but could not tell whether they were the lights of the ambulance or of cars parked along the side of the road. It is clear that, even if the ambulance was entirely on its right side of the road, there was not room for a car to pass between the end of the stretcher, which was placed north of Mr. Thorpe, and the ambulance; and, again, it was a question of fact for the jury whether the men with the ambulance were entitled to rely on the precautions taken to stop oncoming traffic, while they lifted the bodies and carried them to the ambulance. While we find it difficult to believe that a jury would have found that any act of these men was the proximate cause of the injuries sustained by the appellant, the questions of negligence and proximate cause were for the jury.

The case was taken from the jury and dismissed at the conclusion of the plaintiff's (appellant's) case because, as the trial judge aptly pointed out, if defendant (respondent) Palmer was guilty of negligence in any of the respects

charged, the appellant was fully aware of, or, in the exercise of reasonable care, should have known of, such acts of negligence and the dangerous condition thereby created. His knowledge of the danger equaled that of the ambulance driver and his assistant.

The case of *Brucker v. Matsen*, 18 Wn. (2d) 375, 139 P. (2d) 276, is directly in point. There, the appellant's car had been in a collision on the highway. While the service truck of the respondents was engaged in getting it in condition to tow to a nearby town, the truck and the wrecked car were on the wrong side of the road, when they were hit by another car and the appellant was injured. The court said:

"If respondents were guilty of each and every item of negligence alleged, it must be conceded that appellant had full knowledge thereof when he was assisting LaGrange. If respondents were negligent in placing appellant's automobile and their service car upon the left-hand side of the highway; if it were negligence for the lights of the service car to be brightly burning and creating the blinding results alleged by appellant; if the perilous situation then existing was made more hazardous by reason of failure of LaGrange to place warning lights along the highway; and if, as a result of all of these acts of negligence, a condition was created which respondents knew, or in the exercise of reasonable care should have known, was dangerous and likely to result in the injury of appellant, appellant also was fully aware, or in the exercise of reasonable care, should have known of the dangerous condition, and he may not close his eyes to perils thus created and recover for injuries sustained by reason of exposure of himself to such hazards. 38 Am. Jur. 860, 865. As appellant's knowledge of the danger equaled that of the respondents, no liability is predicable of the injury proximately resulting therefrom."

Appellant invokes the rescue doctrine, claiming that he was engaged in extricating another from a position of peril, and that, therefore, he was not held to the usual standard of care. That doctrine, briefly stated, is that one who sees a person in imminent and serious peril through the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own life

or serious injury in attempting to effect a rescue, provided the attempt is not rashly or recklessly made.

This was recognized and discussed at length in *Highland v. Wilsonian Inv. Co.*, 171 Wash. 34, 17 P. (2d) 631. It was there applied to that phase of the doctrine in which the negligence of the defendant has placed the person being rescued in a position of peril. That, obviously, has no application to the present case, because it was no act of the respondents that placed Mr. Thorpe in a position requiring assistance.

In the phase of the doctrine in which the defendant is not responsible for causing the perilous situation of the person sought to be rescued, to invoke the doctrine the defendant must be guilty of some negligence toward the rescuer after he, the rescuer, has begun to attempt the rescue. The distinction is well stated in *Donahoe v. Wabash, St. L. & P. R. Co.*, 83 Mo. 560, 53 Am. Rep. 594:

"It is to be observed that it is only when the railroad company, by its own negligence, created the danger, or through its negligence is about to strike a person in danger, that a third person can voluntarily expose himself to peril in an effort to rescue such person and recover for an injury he may sustain in that attempt. For instance, if a man is lying on the track of a railroad intoxicated or asleep, but in such a position that he could not be seen by the men managing an approaching train and they had no warning of his situation, and another seeing his danger should go upon the track to save his life and be injured by the train, he could not recover, unless the train men were guilty of negligence, with respect to the rescuer, *occurring after the beginning of his attempt*. If the railroad company is not chargeable with negligence with respect to the person in danger, the case of the person who attempted to rescue him and was injured must be determined with reference to the negligence of the company in its conduct toward him and his in making the attempt. In other words, the negligence of the company, as to the person in danger, is imputed to the company with respect to him who attempts the rescue, and if not guilty of negligence as to such person, then it is only liable for negligence occurring *with regard to the rescuer, after his efforts to rescue the person in danger commenced.*" (Italics ours.)

Respondent Palmer was guilty of no negligence toward the rescuer, if appellant was such, after he began his attempt to rescue.

If appellant was engaged in a "rescue," the negligence of the respondents, if any, was not such as is contemplated by either phase of the doctrine, and appellant cannot avail himself of its benefits. If appellant were suing the person whose negligence, if any, was responsible for Mr. Thorpe's original injury, the first phase of the rule might be applicable; if he were suing Mr. Peterson, whose negligence, if any, toward the rescuer occurred after the attempt at rescue had commenced, the second phase of the rule might be applicable. The negligence, if any, of the respondent was not such as to make the rule applicable.

We are, however, of the opinion that the appellant was not engaged in a rescue within the purview of the doctrine. Every person who gives aid to an injured person by picking him up off the highway is not necessarily engaged in a rescue. The rescue doctrine is applicable when one acts impulsively, oblivious of peril, to save or assist an injured person or a person whose injury is imminent; or when, conscious of the peril and weighing the consequences, he nonetheless goes to the aid of the injured person or the person whose injury is imminent. As Justice Cardozo said in *Wagner v. International R. Co.*, 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1:

"The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion."

The basis of the doctrine is that the normal prudential faculties are not operative, being set aside either by impulsive action or because danger is deliberately encountered for a greater good, such as the saving of a life. Appellant's action here was not impulsive. After discovering the condition of Mr. and Mrs. Thorpe, he went to Bellingham and then returned. He was standing by with others, when he responded to a request to assist in lifting Mr. Thorpe onto a stretcher. Nor did he knowingly encounter danger to

assist Mr. Thorpe. The injured man seemingly was in no more imminent or serious peril at that moment than he had been for a considerable period of time prior thereto. He needed assistance, but there was no known danger or peril threatening him. Had appellant seen the oncoming Peterson car and rushed to get Mr. Thorpe out of the way, it would have been an attempt at rescue, but he testified that he did not see the Peterson car before he was hit. The circumstances here did not excuse failure by appellant to observe conditions and take such prudential care as might be necessary for his own safety, so far as the negligence, if any, of the employees of respondent Palmer may have imperiled it.

The trial court made the interesting suggestion, on the validity of which we are not here called upon to pass, that, if appellant was engaged in a rescue, so were the employees of respondent Palmer, the ambulance driver and his assistant; and if appellant was to be exonerated from contributory negligence because he was engaged in a rescue, they should, for the same reason, be exonerated from their negligence.

We do hold, however, that appellant was not engaged in a rescue, and that the negligence of respondent Palmer was not such as is contemplated by either phase of the rule.

The judgment of dismissal is affirmed.

MALLERY, C. J., JEFFERS, STEINERT, and HILL, JJ., concur.