[No. 33446.   Department One.   May 3, 1956.]

HENRY D. FRENCH, *Respondent,* v. LIONEL E. CHASE, *Appellant.*[1]

[1]Reported in 297 P. (2d) 235.

*Edwin R. Johnson,* for appellant.

*D. V. Morthland* and *Norman R. Nashem, Jr.,* for respondent.

OTT, J.—March 29, 1954, Lionel E. Chase was driving his jeepster automobile on the Olalla-Gig Harbor highway in Kitsap county. He was accompanied by Melvin W. Schott and Ray L. Thomas. Approximately two miles south of Olalla, Mr. Chase lost control of the automobile. It swerved to the right side of the road and then crossed to the opposite

side, where it overturned and came to rest upside down, approximately forty-two feet from the surfaced portion of the roadway. Chase and Thomas were thrown clear, but Schott was pinned beneath the automobile, the frame of the windshield resting upon his legs. Chase turned off the motor. He and Thomas then either attempted to lift the car to free Schott and found that they could not or, without trying, decided that they could not. At any rate, they left Schott pinned under the vehicle and went to a nearby residence to seek aid.

At approximately 3:30 p. m., not more than five minutes after Chase and Thomas left to seek help, Henry D. French noticed the overturned vehicle and stopped his truck to see what had happened. Almost immediately, a second vehicle stopped behind French's truck and its occupants joined him in investigating the accident. Upon discovering that Schott was pinned beneath the car, French, his companion, Charles Burkhart, and the occupants of the other car, Betty Heyer and Phyllis Braaten, deliberated for a short time to determine how to extricate Schott. French and Burkhart then attempted to lift the vehicle, but were unable to do so. Thereafter, French stooped and placed his left shoulder under the hood, and, with the added help of the two women, the four persons were able to raise the overturned automobile sufficiently for Schott to free himself. The time interval between French's arrival at the scene and the freeing of Schott was approximately five minutes.

Twenty minutes later, French noticed that his left hand had "gone to sleep," and later that day, while he was driving back to Yakima, his left shoulder became sore. Earlier in the day, he had assisted in some heavy lifting while his truck was being loaded with household furniture, a refrigerator, and a deep-freeze unit. He was accustomed to heavy lifting.

April 8, 1954, French consulted an osteopath about his shoulder. He received treatments for some time, and, in the latter part of August, 1954, he consulted a doctor of medicine in connection with the same injury.

November 30, 1954, French commenced this action against

defendant Chase to recover damages. French alleged that he incurred injuries while rescuing Schott, who had been placed in peril by Chase's negligence in operating the jeepster.

At the trial, Thomas testified that, just prior to the accident, Chase had been exceeding the speed limit; that the three had been drinking intoxicating liquor during the ride, and that Chase was intoxicated. These accusations were denied by Chase.

The testimony was in conflict as to the imminence of Schott's peril. Betty Heyer testified:

"Q. Did he say anything to anybody while he was pinned underneath the car? A. He asked if we would help get it off him. . . . Q. All was quiet? There wasn't anything about the Jeep that looked dangerous or anything like that? A. No."

Phyllis Braaten testified:

"Q. And the Jeep, itself,—there was nothing dangerous from what you could see from the Jeep, itself? A. No, it seemed to be all right. Q. I mean, it wasn't smoking or burning or about to roll over or anything like that? A. No, it was pretty still."

French testified that, as he approached the jeepster, he saw smoke coming from the engine, noticed that battery acid was leaking, and smelled gasoline. With reference to Schott's condition, he testified that his overalls were torn; that his legs were scraped to the ankles; that he was bleeding to some extent, and that he was pinned beneath the windshield, screaming for help.

The jury returned a verdict for the plaintiff. Judgment was entered thereon, and the defendant has appealed.

Appellant makes thirty-seven assignments of error. The principal assignments are (1) that the rescue doctrine should not have been applied to the facts of this case, (2) that the issue of contributory negligence on the part of respondent should have been submitted to the jury, (3) that certain testimony was erroneously admitted, over objection, and (4) that the jury was permitted to speculate as to the cause of the injury.

The application of the rescue doctrine is not a matter of first impression in this jurisdiction. In *Highland v. Wilsonian Investment Co.*, 171 Wash. 34, 17 P. (2d) 631 (1932), we held that, where the defendant's negligence creates a dangerous situation which imminently imperils the life or limb of another, such peril invites rescue, and that, if the rescuer is injured in effecting a rescue, the defendant's negligence is the proximate cause of the rescuer's injury. The rescuer may act either upon impulse or after deliberation, so long as his act is, as stated by Judge Cardozo in *Wagner v. International R. Co.*, 232 N. Y. 176, 133 N. E. 437, 19 A. L. R. 1 (1921), "the child of the occasion." However, in determining whether there is peril to some person, and in acting to effect a rescue after the determination that there is peril, the rescuer must be guided by the standard of reasonable care under the circumstances.

"In *Dixon v. New York, N. H. & H. R. Co.*, 207 Mass. 126, 92 N. E. 1030, it is stated:

" 'It is true, as was held in *Linnehan v. Sampson*, 126 Mass. 506 [30 Am. Rep. 692], and in many of the other cases above cited, that it is for the jury to say, upon all the circumstances, including the existing emergency and the need of immediate action under which they may find that the plaintiff acted, whether in fact his conduct was that of a reasonably prudent man; . . .' " *Highland v. Wilsonian Investment Co., supra,* p. 42.

See, also, 19 A. L. R. 4, 158 A. L. R. 189.

The rescuer's conduct with reference to this standard may involve the issue of contributory negligence. Contributory negligence consists of some act or omission on the part of the rescuer that caused or contributed to cause his injury, and which was not such as would have been done or omitted by a person exercising reasonable prudence under the circumstances. *Walsh v. West Coast Coal Mines,* 31 Wn. (2d) 396, 407, 197 P. (2d) 233 (1948), and case cited.

In *Hawkins v. Palmer,* 29 Wn. (2d) 570, 188 P. (2d) 121 (1947), we stated that every person who gives aid to an injured person is not necessarily engaged in a rescue. We there announced that, where an alleged rescuer is not aware of imminent peril to the injured person, and merely goes

to his aid, the fact that such imminent peril exists does not bring the rescuer within the doctrine.

On the basis of these cases, we hold that, in this jurisdiction, the rescue doctrine, as it is applied to situations of this kind, includes the following elements:

(1) There must be negligence on the part of the defendant which is the proximate cause of peril, or what would appear to a reasonable person under the circumstances to be peril, to the life or limb of another.

(2) The peril, or reasonable appearance of peril, to the life or limb of another must be imminent.

(3) In determining whether the peril, or appearance of peril, is imminent, in the sense that an emergency exists requiring immediate action, the circumstances presented to the rescuer must be such that a reasonably prudent man, under the same or similar circumstances, would determine that such peril existed. (The issue of whether the rescuer's determination conformed with the reasonably prudent man standard is a question for the jury, under proper instructions.)

(4) After determining that imminent peril to the life or limb of a person exists, the rescuer, *in effecting the rescue*, must be guided by the standard of reasonable care under the circumstances. (Whether there has been conformance with this standard also is a question for the jury, under proper instructions.)

Appellant's contention that the rescue doctrine is not here applicable is without merit. There was evidence, although conflicting, from which the jury could have found each of the elements necessary to prove liability under the doctrine.

By instruction No. 3, the court directed the jury to disregard the defense of contributory negligence and, by so doing, decided that the minds of reasonable men could not reach different conclusions from the evidence. *Beck v. Dye*, 200 Wash. 1, 92 P. (2d) 1113, 127 A. L. R. 1022 (1939); *Billingsley v. Rovig-Temple Co.*, 16 Wn. (2d) 202, 133 P. (2d) 265 (1943); *Roloff v. Bailey*, 46 Wn. (2d) 358, 281 P. (2d) 462 (1955).

■ There was conflicting evidence on the question of imminent peril, that is, whether there was an emergency requiring immediate action. Likewise, there was a question for the jury as to whether the situation, as it was presented, necessitated the extreme physical exertion employed by the respondent in effecting the rescue.

In the light of the evidence, it is our opinion that the minds of reasonable men could have differed in determining these questions. The issue of contributory negligence with reference thereto should have been submitted to the jury.

■ Instruction No. 10 did not require that the rescuer, in determining the issue of imminent peril, act as a reasonably prudent man would act under the same or similar circumstances.

■■ Instruction No. 11 instructed the jury that, if they found that the appellant was negligent in causing the wreck, that, as a result thereof, Schott was placed in peril of life or limb, and that the respondent, without acting rashly or recklessly, went to his rescue and was injured, respondent could recover.

This instruction did not require that the *respondent be aware of* any peril to the person to be rescued, and is contrary to the rule announced in *Hawkins v. Palmer, supra*. With reference to the rash and reckless test submitted to the jury, the distinction between a determination that the conduct of a person acting in an emergency is slightly short of being rash and reckless, and a determination that his conduct under such circumstances slightly exceeds that of a reasonably prudent man, appears to be negligible. However, in the submission of an issue of negligence to a jury, we have consistently adhered to the test of the conduct of a reasonably prudent man, under the same or similar circumstances. In *Hawkins v. Palmer, supra,* and *Walsh v. West Coast Coal Mines, supra,* we referred to the rash and reckless test, but only in conjunction with the court's determination of the issue of contributory negligence, as a matter of law. The portion of instruction No. 11 which refers to rash and reckless conduct is not error. However, the reasonably

prudent man standard should be used when negligence or contributory negligence is submitted to a jury.

All of the above instructions were properly excepted to by the appellant and, because of errors present in them, a new trial should be granted.

■ Although no exception was taken to instruction No. 10½, in the event of a new trial it should be noted that the court omitted from this instruction the element of the standard of care required, under the circumstances, in the *method of effecting the rescue.* The standard of care of a reasonably prudent man applies to the impulsive rescuer, as well as to the deliberate rescuer.

■ Appellant assigns as error the admission, over objection, of the testimony of Rose Schott, wife of the rescued person, and the admission in evidence of a photograph she had taken of him. Her testimony, and the photograph, related to the extent of her husband's injuries as they appeared on the day after the accident. In determining the application of the rescue doctrine, the only relevant evidence as to the rescued person's injuries would be that showing how the injuries appeared *to the rescuer* at the time of the rescue for the purpose of establishing the reasonableness of his determination that the injured person was in imminent peril.

The admission of this testimony and the exhibit was prejudicial error.

■ Finally, appellant contends that the evidence of causal relationship between the injury and the rescue was speculative and insufficient to submit the issue to the jury.

We are not in accord with this contention. Respondent French unequivocally testified that his lifting of the jeepster caused the injury. The medical testimony established that the bursitis could have resulted from a single strain, or be the result of years of heavy lifting. One doctor testified that it was more usually the result of trauma, and that, in his opinion, the respondent's condition was the result of trauma. There was sufficient evidence from which the jury could conclude that respondent's injury was the result of lifting the jeepster.

We have considered the remaining assignments and find no reversible error in them.

The judgment is reversed, and the cause remanded with instructions to grant a new trial.

HAMLEY, C. J., DONWORTH, and FINLEY, JJ., concur.

SCHWELLENBACH, J. (concurring)—I believe that, having presented to the jury the issue of determining whether an emergency existed and whether there was need for immediate action, the court should instruct that, if such a determination is made, the rescuer, in effecting the rescue, must be guided by the standard of reasonable care *under the circumstances*. The italicized phrase should be explained to the jury. The standard of reasonable care *under the circumstances of a rescue* was succinctly stated by Justice Cardozo in *Wagner v. International R. Co.*, 232 N. Y. 176, 133 N. E. 437:

"Danger invites rescue. The cry of distress is the summons to relief. The law does not ignore these reactions of the mind in tracing conduct to its consequences. It recognizes them as normal. It places their effects within the range of the natural and probable. The wrong that imperils life is a wrong to the imperilled victim; it is a wrong also to his rescuer. . . .

"The defendant says that we must stop, in following the chain of causes, when action ceases to be 'instinctive.' By this, is meant, it seems, that rescue is at the peril of the rescuer, unless spontaneous and immediate. If there has been time to deliberate, if impulse has given way to judgment, one cause, it is said, has spent its force, and another has intervened . . . We find no warrant for thus shortening the chain of jural causes . . . The law does not discriminate between the rescuer oblivious of peril and the one who counts the cost. It is enough that the act, whether impulsive or deliberate, is the child of the occasion."