[No. 22818-5-III.   Division Three.   January 19, 2006.]

JACK FRENCH ET AL., *Respondents*, v. URIBE, INC., *Petitioner*.

4

*Andrew C. Bohrnsen* (of *Law Office of Bohrnsen & Stowe, P.S.*), for petitioner.

*Diehl R. Rettig*; and *Simeon Osborn* and *Susan Machler* (of *Osborn Machler*), for respondents.

¶1 RUNGE, J.[*] — Generally, Washington's Industrial Insurance Act (Act), Title 51 RCW, precludes employee recovery beyond the compensation provided for in the Act. However, RCW 51.04.010 allows tort recovery if the employer deliberately intended to injure the employee. While working for Uribe, Inc., William Meier was killed and Jack French was permanently injured as the result of an electrical accident. Mr. French and Tina Meier filed this action seeking recovery outside of the Act. The trial court denied Uribe, Inc.'s, motion for summary judgment, concluding (1) the evidence was sufficient to raise a question of fact as to deliberate intent and (2) the claims were not barred by the statute of limitations. Further, the trial court dismissed Mr. French's claim under the rescue doctrine. This court granted the parties' joint motion for discretionary review.

¶2 We reverse the denial of Uribe, Inc.'s, motion for summary judgment because the evidence was insufficient to raise a question of fact as to deliberate intent. We affirm the trial court's dismissal of Mr. French's claim.

¶3 This cause of action arose out of an electrical accident which injured Jack French and caused the death of William Meier. On February 5, 1999, at the time of the accident, both men were employed by Uribe, Inc., and on the jobsite of the Berg Farms project, where irrigation pipe was being installed.

¶4 The Berg Farms project required laying several miles of 42-inch irrigation pipe into excavated ditches from the Columbia River to the fields miles away. The route of the pipe ran under some high voltage power lines. WAC 296--155-525(3)(e)(i) establishes a 10-foot rule forbidding any piece of equipment or machinery from coming within 10 feet of an overhead electrical line.

¶5 A Caterpillar MD-7 Pipe Layer (MD-7) with a 26-foot boom was used to move the pipe to its designation. Charles Craig was the operator of the MD-7 at the time of the

---

[*] Judge Carrie L. Runge is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

accident. While Mr. Craig had 35 years of experience in operating an MD-7 in 25 countries, he was visiting the site of the Berg Farms project when he was asked to operate the MD-7.

¶6 William Meier was assigned to assist Mr. Craig in moving the pipe, which was 35 feet long and weighed 6,200 pounds. Mr. Meier acted as a "swamper." As a swamper, Mr. Meier's job duties included (1) acting as an assistant to Mr. Craig, (2) attaching the pipe to the boom, and (3) holding onto the metal pipe to keep it in line.

¶7 To move the pipe, the MD-7 had to drive over a berm approximately two feet high. As the MD-7 came off of the berm, the pipe came into contact with the north energized phase wire. The boom and the pipe became energized and Mr. Meier fell to the ground, unconscious. Mr. Craig immediately backed the MD-7 up onto the berm. Mr. French, who had been leaving for lunch, ran over to assist Mr. Meier. When Mr. French reached out to steady the swinging pipe, the MD-7's boom once again came into contact with the phase wire. Mr. French was electrocuted, suffering permanent injuries. Mr. Meier died at the hospital.

¶8 Uribe, Inc., purchased the MD-7 a little over one month prior to the accident. The MD-7 was purchased from Lou Cousineau.[1] Mr. Cousineau advised Uribe, Inc., that he had manufactured the boom on the MD-7. The boom was 26 feet long. The stock boom for the MD-7 is 15 feet long. The manufacturer's specifications called for a boom less than 20 feet long.

¶9 William Ryan investigated the accident for the electrical company. As part of his investigation, Mr. Ryan interviewed Mr. Uribe, the owner of Uribe, Inc. Mr. Ryan's affidavit states:

> The plan, as told to me by Mr. Uribe, was to get the boom as close to the wire as possible, drop the pipe on the ground, move the boom to the other side of the wire, and pick the pipe back up

---

[1] Mr. Cousineau was a defendant to this action but settled prior to the parties' joint motion for discretionary review.

again. This procedure would necessarily bring the boom within ten feet of the power line, which would require the employer to de-energize the power line.

Clerk's Papers (CP) at 656. Mr. Uribe denies telling Mr. Ryan that this was the work plan.

¶10 Mike Hart, an engineer, opined that the 26-foot boom length significantly altered the load capacity of the MD-7 in use on the Berg Farms project. According to Mr. Hart, based on the load capacity of the 26-foot boom and the estimated weight of the pipe, the MD-7 with the pipe attached to it would not be able to travel under the power lines and maintain the required 10-foot clearance of the line.

¶11 Charles Craig denies the existence of a work plan. According to Mr. Craig, the job of moving the pipe was an operator judgment thing, and at no time did Mr. Uribe or the two Uribe, Inc., foremen instruct him on how to move the pipe, nor was he told to ignore the 10-foot rule. Mr. Craig was neither advised of nor aware of the length of the boom on the MD-7.

¶12 Uribe, Inc., was not aware of prior line strikes. Mr. Craig denied knowledge of prior line strikes, although he was told that he hit a guide wire (an unenergized wire) on his first day on the job. According to Mr. Craig, he was told after the fact of the guide wire strike. Mr. Craig denied having personal knowledge of actually striking a guide wire.

¶13 Generally, parties may not appeal the denial of a motion for summary judgment. RAP 2.2(a); *Sea-Pac Co. v. United Food & Commercial Workers Local Union 44,* 103 Wn.2d 800, 801-02, 699 P.2d 217 (1985). However, an appellate court may grant discretionary review if the parties stipulate "that the order involves a controlling question of law as to which there is substantial ground for a difference of opinion and that immediate review of the order may materially advance the ultimate termination of the litigation." RAP 2.3(b)(4). The parties have so stipulated.

This court granted discretionary review. When we review a trial court's summary judgment order, all facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and questions of law are reviewed de novo. *Coppernoll v. Reed*, 155 Wn.2d 290, 296, 119 P.3d 318 (2005).

¶14 Summary judgment is properly granted when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991). The burden is on the party moving for summary judgment to demonstrate there is no genuine dispute as to any material fact and reasonable inferences from the evidence must be resolved against the moving party. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979) (citing *Morris v. McNicol*, 83 Wn.2d 491, 494-95, 519 P.2d 7 (1974)). The motion should be granted only if, from all of the evidence, a reasonable person could reach but one conclusion. *Lamon*, 91 Wn.2d at 350 (citing *Morris*, 83 Wn.2d at 494-95).

*(1) Is there an issue of material fact as to whether Uribe, Inc., had a deliberate intent to injure William Meier and Jack French?*

¶15 Generally, an employee's sole remedy for injuries sustained on the jobsite is found within the provisions of the Act. However, if the injuries are caused by the deliberate intention of the employer, the employee may maintain a cause of action against the employer for damages in excess of those compensated for under the Act.

¶16 RCW 51.24.020 states:

> If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title and also have cause of action against the employer as if this title had not been enacted, for any damages in excess of compensation and benefits paid or payable under this title.

To proceed under RCW 51.24.020, the employee must demonstrate that the employer had actual knowledge that certain injury would occur and the employer willfully disregarded this knowledge. *Birklid v. Boeing Co.*, 127 Wn.2d 853, 865-66, 904 P.2d 278 (1995). This exception is narrowly construed to require specific intent to injure. *Id.* at 860. Neither gross negligence nor failure to observe safety procedures and laws governing safety constitutes a specific intent to injure. *Biggs v. Donovan-Corkery Logging Co.*, 185 Wash. 284, 286-88, 54 P.2d 235 (1936); *Peterick v. State*, 22 Wn. App. 163, 189, 589 P.2d 250 (1977), *overruled on other grounds by Stenberg v. Pac. Power & Light Co.*, 104 Wn.2d 710, 709 P.2d 793 (1985). Nor is an act that has a substantial certainty of producing injury sufficient to show deliberate intention. *Higley v. Weyerhaeuser Co.*, 13 Wn. App. 269, 271-72, 534 P.2d 596, *review denied*, 85 Wn.2d 1013 (1975).

¶17 Uribe, Inc., contends that Ms. Meier failed to establish a question of material fact as to whether it deliberately intended to injure Mr. Meier and Mr. French by electrocution. Ms. Meier contends that Uribe, Inc., was well aware that its workers were routinely operating within the 10-foot zone of energized electrical wires, that no safety measures were taken to prevent the boom from striking a wire, and that no contact was made with the power company to de-energize the lines.

¶18 While there is evidence that Mr. Craig previously struck a guide (unenergized) wire, there is no evidence that Uribe, Inc., had knowledge that its employees had been injured by wire strikes on live lines. Significantly, "the courts have refused to find deliberate intent where there was no previous record of harm sufficient to charge the employer with knowledge of certain injury and willful disregard of that knowledge." *Byrd v. Sys. Transp., Inc.*, 124 Wn. App. 196, 204, 99 P.3d 394 (2004).

¶19 In *Byrd*, a trainee with a trucking company died of dehydration while on the road. During the trip, she had complained about not feeling well. Eventually, she moved to

the cab of the truck, where she slept for approximately two days. Her co-worker then discovered that she had died. An action was brought under RCW 51.24.020. The court denied the trucking company's motion for summary judgment. However, the appellate court reversed, concluding that the plaintiff failed to establish that the trucking company caused the trainee's injuries, had actual knowledge that the trainee would likely die, and willfully disregarded such knowledge. *Byrd,* 124 Wn. App. at 205. The court noted that courts have consistently applied *Birklid* to require a pattern of recurring employee complaints of injuries caused by continuing practices by the employer. *Id.* at 203.

¶20 Ms. Meier relies on *Hope v. Larry's Markets,* 108 Wn. App. 185, 29 P.3d 1268 (2001); *Stenger v. Stanwood School District,* 95 Wn. App. 802, 977 P.2d 660 (1999); and *Vallandigham v. Clover Park School District No. 400,* 119 Wn. App. 95, 79 P.3d 18 (2003), *aff'd,* 154 Wn.2d 16, 109 P.3d 805 (2005), to support her argument that the trial court properly denied Uribe, Inc.'s, motion for summary judgment. However, the cases cited by Ms. Meier support the holding in *Byrd.*

¶21 In *Hope,* the employer used a cleaning solution that caused an employee to develop rashes. When informed of the rashes, the employer supplied rubber gloves and a lotion. These remedial measures were ineffective. *Hope,* 108 Wn. App. at 190. Consequently, the court concluded that the matter could proceed to trial for a determination as to whether the employer deliberately intended to injure the employee. *Id.* at 195.

¶22 In *Stenger,* the school district was aware of the injuries inflicted by a developmentally disabled child but still required employees to care for the student. *Stenger,* 95 Wn. App. at 810-12. When Ms. Stenger was seriously injured, she filed suit under RCW 51.24.020. *Id.* at 803-04. The court allowed the case to go to the jury.

¶23 In *Vallandigham,* the court considered an employment environment where the violent behavior of a special education student had caused numerous injuries to staff

members over a four-year period. *Vallandigham*, 154 Wn.2d at 31. Despite these injuries, the court concluded that the first prong of *Birklid* had not been met because the employer was implementing remedial measures and could not know with certainty that injuries to the staff would continue. *Id.* at 33. *Vallandigham* disapproved of the conclusion in *Stenger* and *Hope* that the second prong of *Birklid* could be established if attempted remedial measures were ineffective. *Id.* at 33-34.

¶24 These cases demonstrate the conclusion of *Byrd*. A showing of a pattern of injuries is required in order to meet the first prong of *Birklid*. Here, Ms. Meier has failed to present any facts establishing a pattern of injuries to Uribe, Inc., employees caused by line strikes. Absent such evidence, Ms. Meier has failed to establish actual knowledge that injury is certain to occur.

¶25 Ms. Meier next contends that the existence of a work plan designed to put employees in close contact with energized power lines raises a question of fact as to deliberate intent. She asks the court to consider the affidavit of Mr. Ryan. Mr. Ryan stated that Mr. Uribe explained that the plan was to get the boom as close to the wire as possible, drop the pipe, move the boom to the other side, and then pick up the pipe again. Uribe, Inc., contends this testimony is inadmissible, while Ms. Meier argues that this testimony is admissible as an admission by a party opponent. ER 801(d)(2).

¶26 Even if we assume this statement is admissible and Mr. Uribe had a work plan that placed employees in peril, there is no evidence raising a question of fact as to whether this work plan was communicated to Mr. Craig. Mr. Craig denied the existence of a work plan. According to Mr. Craig, the movement and placement of the pipe was left solely to the judgment of the operator.

¶27 Additionally, the mere presence of a dangerous situation is not sufficient to establish deliberate intent. In *Schuchman v. Hoehn*, 119 Wn. App. 61, 79 P.3d 6 (2003), a

14-year-old employee was injured by an ice auger. In their action, the parents alleged six violations of the child labor laws. *Id.* at 72. One of the employers told the child's mother they knew this was going to happen, they just did not know when, nor how, to fix it. *Id.* at 65. Despite this admission, the court concluded that the employer did not have certain knowledge that the auger would injure the child. *Id.* at 72. The court found that gross negligence and failure to follow safety procedures is insufficient to establish deliberate intent. *Id.*

¶28 The second prong in *Birklid* requires a showing that is more than negligence or gross negligence. *Birklid,* 127 Wn.2d at 860. Because Ms. Meier has failed to meet the requirements of the first prong, she cannot establish the second prong.

¶29 Uribe, Inc., contends that Mr. French was not performing work for it at the time of the accident and cannot bring a claim under RCW 51.24.020.

¶30 Like Ms. Meier, Mr. French cannot establish that Uribe, Inc., had certain knowledge that he would be injured. Additionally, as explained below, any claim that Mr. French has should be based on the rescue doctrine. However, this claim also fails, as Ms. Meier cannot establish deliberate intent with regard to this claim.

¶31 The trial court erred by denying Uribe, Inc.'s, motion for summary judgment based on its conclusion that there was sufficient evidence to raise a question of fact as to deliberate intent.

*(2) Did the court err by applying a three-year statute of limitations?*

¶32 Uribe, Inc., argues that the two-year statute of limitations found in RCW 4.16.100 applies to cases brought pursuant to RCW 51.24.020.

¶33 RCW 4.16.100 provides for a two-year statute of limitations for:

(1) An action for libel, slander, assault, assault and battery, or false imprisonment.

(2) An action upon a statute for a forfeiture or penalty to the state.

¶34 RCW 4.16.100 does not apply to cases under RCW 51.24.020. The two-year period set forth in RCW 4.16.100 applies to specifically enumerated torts and does not contain any general language incorporating other torts.

¶35 Prior to the enactment of RCW 51.24.020, the three-year statute of limitations contained in RCW 4.16.080 applied to actions by an employee against the employer. *Riste v. Gen. Elec. Co.*, 47 Wn.2d 680, 682, 289 P.2d 338 (1955). RCW 4.16.080(2) states as follows:

The following actions shall be commenced within three years:

. . . .

(2) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another not hereinafter enumerated.

Significantly, RCW 51.24.020 provides that the employee shall have a cause of action against the employer "as if this title had not been enacted." Moreover, Washington courts have concluded that RCW 4.16.080(2) applies to any injury to a person or their rights not enumerated in other statute of limitations provisions. *Stenberg*, 104 Wn.2d at 720; *Bader v. State*, 43 Wn. App. 223, 227, 716 P.2d 925 (1986).

¶36 We conclude that the trial court did not err by concluding that the three-year statute of limitations applies. Because RCW 4.16.080(2) applies, we need not address Uribe, Inc.'s, argument that the catchall provision, RCW 4.16.130, applies.

*(3) Is Jack French entitled to claim rights under the rescue doctrine?*

¶37 The rescue doctrine allows a rescuer to recover damages from the rescued person if the rescuer is

injured during the rescue of a person who negligently caused the dangerous situation that invited the rescue. *Gardner v. Loomis Armored, Inc.,* 128 Wn.2d 931, 943, 913 P.2d 377 (1996). The elements of the rescue doctrine are: (1) that the unlawful acts of the defendant are the proximate cause of the danger to the other person, (2) that the danger to the person must be imminent, (3) that a reasonably prudent person under the same conditions would determine that a peril existed, and (4) that the rescuer must use reasonable care in effecting the rescue. *French v. Chase,* 48 Wn.2d 825, 297 P.2d 235 (1956).

¶38 The rescue doctrine serves two purposes. First, the rescue doctrine notifies tortfeasors that it is foreseeable a rescuer will come to the aid of the person imperiled by a tortfeasor's conduct, and that the tortfeasor owes the rescuer a duty similar to the duty owed to the person the tortfeasor imperils. Second, the doctrine negates the presumption that the rescuer assumed the risk of injury by undertaking the rescue, as long as the rescuer does not act rashly or recklessly. *McCoy v. Am. Suzuki Motor Corp.,* 136 Wn.2d 350, 355, 961 P.2d 952 (1998).

¶39 Mr. French contends the court erred by determining he is not entitled to rights under the rescue doctrine. Uribe, Inc., contends the rescue doctrine does not apply because this right was given up as part of the compromise made to create workers compensation. Uribe, Inc., also contends that the rescue doctrine does not apply because it is based on negligence principles.

¶40 There is no indication that RCW 51.24.020 precludes the application of the rescue doctrine. Further, this provision states that if an injury results from the deliberate intention of the employer, the worker can recover pursuant to the title and also have a cause of action as if the title had not been enacted.

¶41 Further, Uribe, Inc.'s, argument that the rescue doctrine applies only in negligence cases is not persuasive. While many of the cases, like *French,* describe the doctrine

in terms of negligence concepts, in *McCoy,* the court applied the doctrine to tortfeasors in general. *McCoy* was a products liability case and the defendant was subject to strict liability and was not a negligent tortfeasor.

¶42 Uribe, Inc., maintains that Mr. French must meet the requirements of RCW 51.24.020 in order to proceed with a claim based on the rescue doctrine. But *McCoy* explains that one of the purposes of the rescue doctrine is to show the tortfeasor that he or she owes the same duty to the rescuer that was owed to the person imperiled. In other words, Mr. French need not establish the requirements of RCW 51.24.020 as long as the person in peril can.

¶43 Uribe, Inc., also argues that Mr. French cannot succeed with a claim under the rescue doctrine because he cannot establish legal causation. According to Uribe, Inc., legal causation here consists of meeting the requirements contained in RCW 51.24.020.

¶44 Legal causation is a question of law and rests on policy concerns about how far the defendant's potential liability should extend. *Hartley v. State,* 103 Wn.2d 768, 779, 698 P.2d 77 (1985). An employer who violates RCW 51-.24.020 should anticipate that a fellow employee would come to the aid of the employee placed in danger.

¶45 In summary, the rescue doctrine should apply to workers injured while assisting another worker who establishes a claim under RCW 51.24.020. While this provision is narrowly applied, once a worker is successful, the employer should be responsible for other employees rescuing the imperiled worker because the employer owes the rescuers the same duty.

¶46 In the present case, Ms. Meier cannot establish a claim pursuant to RCW 51.24.020 and, therefore, Mr. French's claim pursuant to the rescue doctrine must also fail. As a result, the court erred by concluding Mr. French was not entitled to claim rights under the rescue doctrine but correctly dismissed his claim.

¶47 We reverse the trial court's decision denying Uribe, Inc.'s, motion for summary judgment and affirm the dismissal of Mr. French's claim.

KATO, C.J., and BROWN, J., concur.

Review denied at 158 Wn.2d 1022 (2006).