**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| GABRIELLA COTHRAN, individually and as Personal Representative of the ESTATE OF REGINALD J. GUTIERREZ; ANTONIA GUTIERREZ, individually; and VICTORIA GUTIERREZ, individually, | No. 57310-5-II |
| Appellants, | |
| v. | |
| CITY OF TACOMA, a municipal corporation, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—Tacoma Police officers detained Bruce Johnson at the Tacoma mall for carrying a shotgun, wearing a "Sheriff" hat, carrying handcuffs on his belt, and being hostile with mall security. At the time, Johnson had an active warrant for his arrest stemming from a previous assault incident. The parties dispute whether the responding officers knew about the warrant. Instead of arresting Johnson, the officers returned Johnson's shotgun to him and released him.

Two weeks later, Officer Jake Gutierrez responded to a domestic disturbance call at Johnson's home. When Gutierrez entered the home, Johnson used the same shotgun to shoot Gutierrez multiple times and beat him with the end of the gun. Gutierrez died from his injuries.

Gutierrez's daughters, including Gabriella Cothran, sued the City of Tacoma and South Sound 911 for wrongful death and loss of consortium. Gabriella Cothran also sued in her capacity as personal representative for Gutierrez's estate. Cothran alleged that the defendants were

negligent for failing to recognize Johnson had an outstanding warrant, for releasing him, and for giving him back the gun he used to kill Officer Gutierrez.

The City moved for summary judgment on all of Cothran's claims, arguing, among other defenses, that Cothran's claims were barred by the professional rescuer's doctrine. South Sound 911 also moved for summary judgment. The trial court granted both summary judgment motions and dismissed all of Cothran's claims. The trial court also denied Cothran's motion for reconsideration.

Cothran now appeals arguing that the trial court erred by granting the summary judgment motions and denying reconsideration. We disagree and affirm the trial court's orders because the professional rescuer doctrine applies and bars all of Cothran's claims. Because we hold that the professional rescuer doctrine applies, we do not reach the other issues in the case.

FACTS

I. SOUTH SOUND 911

South Sound 911 is a communications agency that provides services to law enforcement and fire agencies in Pierce County. South Sound 911's services include entering arrest warrant information into the Washington Crime Information Center (WACIC), which is a state level computerized index of criminal justice information that the Washington State Patrol maintains. WACIC users can search for a name in the database to determine if someone has any outstanding warrants for arrest. Police officers can search WACIC through their mobile computer terminals in their patrol vehicles. South Sound 911 also sometimes searches the WACIC for information when law enforcement officers ask for this information in the field while they are responding to calls.

## II. JOHNSON'S HISTORY

### A. Assault & Warrant

In May 2015, Johnson was charged with fourth degree assault and unlawful display of a weapon following an incident at a marijuana dispensary. In November 2015, the trial court imposed several conditions that Johnson was required to comply with, including following the law and refraining from similar assaultive behavior, completing an anger management class, having the City destroy his weapon, and continuing monthly monitoring. Johnson violated the court order three months later by failing to appear at a show cause hearing. The trial court issued a warrant for Johnson's arrest.

### B. Tacoma Mall Incident

On November 15, 2016, Johnson entered the Tacoma Mall wearing a hat that read "Sheriff," carrying law enforcement grade handcuffs on his belt, and carrying a soft long-arm-rifle case around his shoulder. The mall security team approached Johnson and asked about the rifle case. Johnson became hostile, and the responding security officer asked the security director to provide additional assistance. When Johnson's hostility escalated, the security director asked Johnson to leave the mall. The security team called Tacoma Police Department for assistance.

Two Tacoma Police Department officers responded and found Johnson in the parking lot. The officers noticed Johnson's shotgun on the passenger seat of his vehicle and asked Johnson to get out of his car. The officers cleared the shotgun and placed it in the backseat of the patrol car while talking with Johnson. The officers asked South Sound 911 to run a check of the shotgun's serial number. The search showed that the firearm was not listed as stolen or registered to anyone.

The officers conducted a warrant search on Johnson through their mobile computer in the patrol car. The search produced a near hit showing there were five records found related to Johnson but no "exact match" to the name—"Bruce R. Johnson"—and birthdate the officers ran. Clerk's Papers (CP) at 136. The associated records for the near hit were available for the officers to review and would have revealed an active misdemeanor arrest warrant for "Johnson, Bruce Randall II" stemming from his charges for fourth degree assault and displaying a weapon. CP at 143.

The officers claim to have asked South Sound 911 to search its records for any outstanding warrants, and they claim they were told via radio that Johnson had no outstanding warrants. But nothing in the computer aided dispatch inquiry report reflects any such request.

The officers concluded that there was not probable cause to arrest Johnson for any criminal offenses. The officers returned Johnson's shotgun to him and released Johnson.

C.    Officer Safety Notice

Three days after the incident at the Tacoma mall, the South Sound Regional Intelligence Group's weekly summary was sent to the police department's email listserv. An officer safety notice for Johnson appeared on page two of the weekly report. The notice described Johnson as a "Police Impersonator," described his most recent interactions with the department, included Tacoma Police Department's concerns regarding Johnson's apparent mental decline, and noted that Johnson was armed and dangerous. CP at 787-89.

III. MURDER INCIDENT

Two weeks after the incident at the mall, on November 30, 2016, Tacoma Police Department Officer Gutierrez responded to a domestic dispute between Johnson and his wife. Johnson had locked his wife out of their home and locked himself inside with their two children.

4

Officer Gutierrez eventually contacted Johnson's landlord who arrived to unlock the front door. She called inside to tell Johnson that the police were there to talk to him about not locking his wife out. Gutierrez entered the home and ascended the split-level staircase toward Johnson. When Gutierrez reached the top of the stairs, Johnson opened fire, shooting Gutierrez in the face with his shotgun. Johnson continued to shoot Gutierrez 24 times with the shotgun and a rifle and beat him with the end of the shotgun. Gutierrez died from his injuries.

## IV. PROCEDURAL FACTS

Gutierrez's daughters and his estate, through Cothran, filed a wrongful death lawsuit against the City and South Sound 911. Cothran claimed that the City breached its purported duty to Gutierrez by failing to arrest Johnson during the mall incident on his misdemeanor warrant, as well as a variety of suspected misdemeanor offenses; failing to seize Johnson's shotgun during the mall incident; and failing to alert Gutierrez to the information in the weekly safety bulletin. Cothran claimed that the alleged breaches were the proximate cause of Gutierrez's death.

The City moved for summary judgment, arguing in part that all of Cothran's claims were barred by the professional rescuer's doctrine. South Sound 911 also moved for summary judgment.

The trial court granted both summary judgment motions and dismissed Cothran's claims. Cothran filed a motion for reconsideration, which the trial court denied. Cothran appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's ruling on summary judgment de novo. *Schibel v. Eymann*, 189 Wn.2d 93, 98, 399 P.3d 1129 (2017). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see also*

CR 56(c). When evaluating the evidence on summary judgment, we must view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Piris v. Kitching*, 185 Wn.2d 856, 861, 375 P.3d 627 (2016) (plurality opinion).

In a tort action based on negligence, the plaintiff must establish the existence of a duty owed to the plaintiff, breach of that duty, and that the breach proximately caused the plaintiff's injuries. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). An action for negligence does not lie if the plaintiff cannot establish that the defendant owed a duty of care. *McCluskey v. Handorff-Sherman*, 125 Wn.2d 1, 6, 882 P.2d 157 (1994). The preliminary determination of whether a duty of care exists is a question of law that the court decides. *Hertog*, 138 Wn.2d at 275.

## II. PROFESSIONAL RESCUER DOCTRINE

The rescue doctrine provides a source of recovery to someone who is injured when reasonably attempting to rescue another person who has negligently put themselves in danger. *Maltman v. Sauer*, 84 Wn.2d 975, 976-77, 530 P.2d 254 (1975). The professional rescuer doctrine, originally developed as an exception to the rescue doctrine, is based on a broad concept of assumption of risk. *In re Est. of McCartney v. Pierce County*, 22 Wn. App. 2d 665, 689, 513 P.3d 119 (2022). "A professional rescuer assumes certain risks as part of [their] job and is compensated for accepting those risks." *Loiland v. State*, 1 Wn. App. 2d 861, 865, 407 P.3d 377 (2017). The professional rescuer may not recover where "'the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity.'" *Id*. (quoting *Maltman* 84 Wn.2d at 978).

The Washington Supreme Court first recognized the professional rescuer doctrine in *Maltman* in 1975. There*,* the Supreme Court held that the estates of professional rescuers who died in a helicopter crash on their way to transport a victim for medical care could not recover in tort. 84 Wn.2d at 978-79. The court recognized that dangers inherent in the professional rescue activity, and therefore foreseeable, are willingly accepted when a professional accepts a particular position and accepts pay in exchange for their work. *Id*. at 978. On the other hand, the bar to recovery does not apply when a professional rescuer is injured by a "'hidden, unknown, [or] extrahazardous'" danger that is not inherently associated with the particular rescue activity that their job requires. *Id*. at 978 (quoting *Jackson v. Velveray Corp.*, 82 N.J. Super. 469, 198 A.2d 115 (1964)). But when the injury is the result of a hazard generally recognized as being within the scope of dangers identified with the particular rescue operation, the professional rescuer will not be able to recover. *Id.* at 979.

Since *Maltman*, the Washington Supreme Court has also recognized an exception to the professional rescuer doctrine when "negligent or intentional acts of intervening parties not responsible for bringing the rescuer to the scene" cause the rescuer's injury. *Beaupre v. Pierce County*, 161 Wn.2d 568, 575, 166 P.3d 712 (2007).

Cothran argues that this case is like *Beaupre* in that the negligence of the City and South Sound 911 caused Gutierrez's death. We disagree. In *Beaupre*, the court permitted a Pierce County Sheriff's Office sergeant to bring a lawsuit against his employer after being hit and injured by a fellow officer during a traffic stop. *Id*. at 570. The court reasoned that the professional rescuer doctrine did not apply where a fellow officer's *intervening* negligence during a rescue operation caused the plaintiff's injuries. *Id.* at 575. But here, any negligence by the City or South Sound 911

7

occurred *before* Gutierrez responded to the scene. "'[T]he defendant must be guilty of some negligence toward the rescuer *after* . . . the rescuer[] has begun to attempt the rescue.'" *Maltman*, 84 Wn.2d at 982 (emphasis added) (quoting *Hawkins v. Palmer*, 29 Wn.2d 570, 575, 188 P.2d 121 (1947)).

The facts of this case are more similar to those in *Est. of McCartney v. Pierce County*, 22 Wn. App. 2d 665, 513 P.3d 119, *review denied*, 200 Wn.2d 1014, 519 P.3d 590 (2022). There, the widow of a Pierce County deputy killed in the line of duty brought claims against Pierce County. *Id*. at 673. McCartney argued that the County's high-level staffing and training decisions amounted to negligence, which ultimately led to McCartney's on-duty murder. *Id*. We rejected McCartney's argument that the professional rescuer doctrine did not apply, explaining that for a professional rescuer to recover for negligence, "the County must have committed a negligent, intervening act *after* McCartney began the rescue attempt." *Id.* at 692. There, the County's alleged negligence "took place well before McCartney began the rescue." Therefore, the County was not an intervening party. *Id*. Similarly here, the City's failure to arrest Johnson two weeks prior to Gutierrez's death clearly took place before Gutierrez's encounter with Johnson in Johnson's home. Accordingly, the professional rescuer doctrine applies to Gutierrez and his estate cannot recover.

Cothran attempts to distinguish *McCartney* by emphasizing the "continuing nature of the negligence, especially in relation to the harm which ultimately occurred." Br. of Appellant at 56. *Loiland* is instructive. There, a firefighter stopped to mark an abandoned vehicle in an ice storm and a car struck him. *Loiland*, 1 Wn. App. 2d at 864. The firefighter sued several defendants, including the Department of Transportation, arguing it had failed to deice the roads. *Id*. at 870. Loiland argued that the professional rescuer doctrine did not bar his claims because the Department

of Transportation's negligence was ongoing over a period of time before, during, and after the accident where Loiland was injured. Division One rejected Loiland's argument, explaining that ongoing negligence is not the equivalent of independent, intervening negligence and is not an exception to the professional rescuer doctrine. *Id*.

Cothran also contends that *McCartney* is bad policy. But we decided *McCartney* less than two years ago and the Supreme Court denied review. Cothran's disagreement with our decision is not sufficient to warrant departing from our recent application of the professional rescuer doctrine.

Law enforcement is a dangerous profession. *State v. Flores*, 186 Wn.2d 506, 523 n.6, 379 P.3d 104 (2016) (listing statistics demonstrating the dangers police officers face). Here, Gutierrez responded to the scene of a domestic disturbance. While tragic, the risk of encountering violence in such situations is "inherently within the ambit of those dangers which are unique to and generally associated with" the particular rescue profession for which he was compensated. *Loiland*, 1 Wn. App. 2d at 865. And the alleged negligent acts occurred before the rescue began; they were not intervening acts. As a result, the professional rescuer doctrine bars recovery in this case as a matter of law.

### III. RCW 41.26.281

Cothran also argues that the professional rescuer doctrine cannot apply in this instance because it would directly conflict with RCW 41.26.281. We disagree.

The Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act (LEOFF), chapter 41.26 RCW, specifically preserves officers' right to sue their employers for negligence in addition to recovering workers' compensation. *See* RCW 41.26.281 ("right to sue" provision); *Fray v. Spokane County*, 134 Wn.2d 637, 952 P.2d 601 (1998). The State specifically

enacted LEOFF "to provide greater benefits to injured police officers and fire fighters than they would receive under the workers' compensation system," including the "'right to sue' their employers for negligence." *Fray*, 134 Wn.2d at 643. RCW 41.26.281 provides:

> If injury or death results to a member from the intentional or negligent act or omission of a member's governmental employer, the member, the widow, widower, child, or dependent of the member shall have the privilege to benefit under this chapter and also have cause of action against the governmental employer *as otherwise provided by law*, for any excess of damages over the amount received or receivable under this chapter.

(Emphasis added.)

The plain language of RCW 41.26.281 does nothing more than preserve causes of action for private claims related to the intentional or negligent acts of a governmental employer in addition to members' ability to receive benefits under LEOFF. It does not allow for such claims to be asserted free of the limitations to which they are subject when otherwise asserted. Nothing in the statute's language evinces a legislative intent to render inapplicable defenses that would otherwise apply. The plain language—"as otherwise provided by law"—shows the legislature intended the opposite: a party seeking the benefit of RCW 41.26.281 must demonstrate that the underlying claim is viable and not subject to a defense, such as the professional rescuer doctrine. Cothran fails to do so.

Cothran suggests that applying the professional rescuer doctrine would mean that the doctrine imposes a per se bar to law enforcement officers suing their employers, which is directly contrary to RCW 41.26.281. But as explained above, the professional rescuer doctrine does not bar *all* lawsuits, as *Beaupre* establishes. 161 Wn.2d at 575. There are exceptions, but they do not apply here. RCW 41.26.281 does not create a statutory exception to the professional rescuer doctrine, nor do the two conflict. Cothran's argument fails.

10

CONCLUSION

We hold that Cothran's claims are barred under the professional rescuer doctrine and we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

 

Glasgow, J.

I concur:

Veljacic, J.

CRUSER, C.J. (concurring in result) — I concur in the result reached by the majority, but write separately because I would decide this issue based solely on Cothran's failure to show a genuine issue of material fact as to proximate cause. I would not decide this case under the professional rescuer doctrine.

Proximate cause has two elements that must be satisfied: (1) cause in fact and (2) legal causation. *Lowman v. Wilbur*, 178 Wn.2d 165, 169, 309 P.3d 387 (2013). " 'Cause in fact refers to the "but for" consequences of an act.' " *N.L. v. Bethel Sch. Dist.*, 186 Wn.2d 422, 437, 378 P.3d 162 (2016) (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). Cause in fact is typically a jury question. *Id.* "Issues of negligence and causation in tort actions are questions of fact not usually susceptible to summary judgment, but a question of fact may be determined as a matter of law where reasonable minds can reach only one conclusion." *Cho v. City of Seattle*, 185 Wn. App. 10, 15, 341 P.3d 309 (2014).

But where the causal connection between the alleged tortious act and the injury is wholly speculative, as in this case, reasonable minds simply could not find cause in fact and summary judgment is appropriate. *See, e.g.*, *Moore v. Hagge*, 158 Wn. App. 137, 148, 241 P.3d 787 (2010).

Here, Cothran claims that the officers' failure to arrest Johnson at the mall was the cause in fact of Johnson's murder of Officer Gutierrez. In order to reach that conclusion, however, the trier of fact would have to make the following speculative assumptions: that had Johnson been arrested at the mall on November 15, 2016, the domestic violence incident at Johnson's home two weeks later on November 30, 2016, would not have occurred. Or, even if it still would have occurred, it would not have resulted in the death of Gutierrez because the arrest would have resulted in the retention of his shotgun by the police.

But these assumptions, in turn, require the employment of additional speculative assumptions, such as (1) that the Pierce County jail would have accepted Johnson for booking on a misdemeanor warrant for failing to appear at a show cause hearing, (2) that if he had been accepted into the jail he would not have been released prior to November 30th, (3) that if he *had* been released his shotgun would not have been returned to him, (4) that without his shotgun he would not have had access to any other gun nor used any other gun on November 30th, and (5) that without access to any other guns, he would not have found any other weapon or instrument with which to bludgeon Officer Gutierrez. As it relates to the guns, we know as a matter of fact that several of these required assumptions fail. Johnson not only shot Officer Gutierrez with a .22 caliber rifle, he also shot Gutierrez with his own service weapon, a .45 caliber Glock.

Johnson, in a despicable act, attacked Officer Gutierrez with murderous intent and not only shot him, but beat him so severely it shocks the conscience. There are no words to adequately describe the heinousness of Johnson's crime. But Cothran's reliance on a series of speculative assumptions to establish proximate cause does not create a genuine issue of material fact. And because Cothran cannot demonstrate a genuine issue of material fact, I would affirm the trial court on that basis and not address the professional rescuer doctrine.

CRUSER, C.J.

13