[No. 43327. En Banc. January 7, 1975.]

WILLIAM L. MALTMAN, as *Administrator, Appellant,* v.
PETER H. SAUER et al., *Respondents.*

*William L. Maltman* (of *Hennings, Maltman & Weber*),
pro se.

*Leo A. Anderson,* for respondents.

HUNTER, J.—This appeal results from the initiation of a
wrongful death action by the plaintiff (appellant), William
L. Maltman, as administrator of the estates of John M.
Rudock, deceased, Gary Charles Nistler, deceased, and Ger-
ald Rybacki, deceased.

On September 4, 1970, a car operated by defendant Peter H. Sauer, and registered in the name of defendant Gerd Sauer, his father, was involved in an automobile accident east of North Bend, Washington. State Trooper W. P. Isom arrived at the scene of the accident at 9:10 p.m., and immediately determined that the defendant, Peter H. Sauer, should be rushed to a hospital for medical attention. Realizing that a military helicopter was available for such emergency situations under a rescue program entitled MAST (Military Assistance to Safety and Traffic), State Trooper Isom put in a request call which was forwarded to army headquarters at Fort Lewis. Rudock, Nistler, Rybacki and Lieutenant Curt Heady, pursuant to their duties as active members of the United States Army, constituted the crew of the helicopter which was dispatched. While en route to the predetermined pickup point, the helicopter crashed and the above parties were killed. The cause of the tragedy, from the record of this case, is uncertain.

This action was brought for the benefit of the surviving members of the families of the heretofore mentioned decedents, Rudock, Nistler and Rybacki. It was alleged that the defendant, Peter H. Sauer, was liable in tort under the "rescue doctrine" as it applied to the instant case.

On February 13, 1973, the defendant moved for a summary judgment pursuant to CR 56. After argument by both parties to the court, the defendant's motion was granted.

The plaintiff appealed to the Court of Appeals, Division One, and, on June 21, 1974, the matter was transferred directly to this court for review.

This case requires an assessment and determination of the scope of the "rescue doctrine." The "rescue doctrine" gained initial prominence when Justice Cardozo stated in *Wagner v. International Ry.*, 232 N.Y. 176, 133 N.E. 437 (1921), that "danger invites rescue." In a general sense the "rescue doctrine" is intended to provide a source of recovery to one who is injured while reasonably undertaking the rescue of a person who has negligently placed himself in a

position of imminent peril. 4 A.L.R.3d 558, *Rescue Doctrine-Negligence* (1965). The leading case in this state is *French v. Chase*, 48 Wn.2d 825, 297 P.2d 235 (1956), in which the plaintiff allegedly injured his shoulder while attempting to free the defendant from a pinned position underneath his car. We stated therein on page 830 that the "rescue doctrine" in this state included the following elements:

(1) There must be negligence on the part of the defendant which is the proximate cause of peril, or what would appear to a reasonable person under the circumstances to be peril, to the life or limb of another.

(2) The peril, or reasonable appearance of peril, to the life or limb of another must be imminent.

(3) In determining whether the peril, or appearance of peril, is imminent, in the sense that an emergency exists requiring immediate action, the circumstances presented to the rescuer must be such that a reasonably prudent man, under the same or similar circumstances, would determine that such peril existed. (The issue of whether the rescuer's determination conformed with the reasonably prudent man standard is a question for the jury, under proper instructions.)

(4) After determining that imminent peril to the life or limb of a person exists, the rescuer, *in effecting the rescue*, must be guided by the standard of reasonable care under the circumstances.

The defendant does not question the validity of the elements which compose the "rescue doctrine." Rather, he questions the application of the doctrine to a professional, nonvoluntary rescuer.

The plaintiff contends that the classification of the rescuer as voluntary or nonvoluntary is not determinative as to whether a particular party comes within the ambit of the doctrine. We agree, provided certain logical distinctions are made.

The court, in *Wagner v. International Ry.*, *supra*, did not distinguish the volitional from the nonvolitional rescuer. Instead, Justice Cardozo stated on page 181: "It is enough

that the act, whether impulsive or deliberate, is the child of the occasion."

■ We believe that a professional rescuer, in making a deliberate attempt at saving a life, and under the correct factual setting, is within the intended scope of the "rescue doctrine." The doctrine does not necessitate that an individual be prompted by purely altruistic motives. This is not to say the doctrine applies in the same exact fashion to both voluntary and nonvoluntary rescuers. In the case of a professional rescuer certain hazards are assumed which are not assumed by a voluntary rescuer. The professional rescuer, however, does not assume all the hazards that may be present in a particular rescue operation. This distinction was discussed in *Jackson v. Velveray Corp.*, 82 N.J. Super. 469, 198 A.2d 115 (1964). That case involved the liability of a landowner to a fireman who was injured while discharging his duty as a public employee in extinguishing a fire. The court, citing an earlier decision, stated on page 476:

> It is contemplated that a fireman in the performance of his duty shall endeavor to extinguish fires however caused and encounter those risks and hazards which are ordinarily incidental to such an undertaking and which may be reasonably expected to exist in the situation in which he places himself. *It does not follow that a fireman must be deemed as a matter of law to have voluntarily assumed all hidden, unknown, and extrahazardous dangers which in the existing conditions would not be reasonably anticipated or foreseen.*

(Italics ours.) *See also Walsh v. Madison Park Properties, Ltd.*, 102 N.J. Super. 134, 245 A.2d 512 (1968); and *Krauth v. Israel Geller & Buckingham Homes, Inc.*, 31 N.J. 270, 157 A.2d 129 (1960). Those dangers which are inherent in professional rescue activity, and therefore foreseeable, are willingly submitted to by the professional rescuer when he accepts the position and the remuneration inextricably connected therewith. *Spencer v. B.P. John Furniture Corp.*, 255 Ore. 359, 467 P.2d 429 (1970). The "rescue doctrine" articulated in *French v. Chase, supra,* implicitly necessi-

tates a special criteria for assessing the applicability of the doctrine in a given case to a professional rescuer. We conclude that the proper test for determining a professional rescuer's right to recovery under the "rescue doctrine" is whether the hazard ultimately responsible for causing the injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity. Stated affirmatively, it is the business of professional rescuers to deal with certain hazards, and such an individual cannot complain of the negligence which created the actual necessity for exposure to *those* hazards. When the injury is the result of a hazard generally recognized as being within the scope of dangers identified with the particular rescue operation, the doctrine will be unavailable to that plaintiff.

This case presents such a hazard. A danger unique to helicopter rescues is the possibility of a mechanical malfunction in the airplane or pilot error, either of which could cause a crash. Therefore, a helicopter crew is specially trained to meet these known hazards. They are hazards inherently within the ambit of those dangers unique to and generally associated with this particular rescue operation. Conversely, these hazards are not hidden, unknown, and extra hazardous dangers which would not be reasonably anticipated or foreseen by the decedent professional rescuers. *Jackson v. Velveray Corp., supra.* We therefore hold as a matter of law that the "rescue doctrine" was not available to the decedents, and that the defendant's motion for summary judgment was properly granted by the trial court on this basis.

The defendant further argues that in testing the "rescue doctrine" under the traditional formula for recovery in a tort action, irrespective of whether the decedents were professional rescuers, the plaintiff cannot prevail.

The courts of this state have consistently recognized the rule that when a plaintiff brings an action in tort,

regardless of the particular doctrine relied upon, he has the burden of showing that

> (1) there is a statutory or common-law rule that imposes a *duty* upon defendant to refrain from the complained-of conduct and that is designed to protect the plaintiff against harm of the general type; (2) the defendant's conduct violated the duty; and (3) there was a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by plaintiff.

*Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969). Basically, the defendant contends that the facts, as alleged by the plaintiff, clearly fail to meet the requirements of elements (1) and (3) above. He argues that under these circumstances, the questions of duty, foreseeability, and proximate cause present issues of law for the court, and therefore the trial court's order granting summary judgment on this basis was proper. In response, the plaintiff contends that a jury question has properly been presented on whether or not the defendant's initial negligence started a chain of events which continued until the helicopter crashed. Furthermore, the plaintiff argues that sufficient facts have been alleged to require a jury trial on the specific issues of duty, foreseeability, and proximate cause. We agree with the defendant.

 The question of duty encompasses the concept of foreseeability. As we stated in *Rikstad v. Holmberg, supra* at 268:

> The better considered authorities do not regard foreseeability as the handmaiden of proximate cause. To connect them leads to too many false premises and confusing conclusions. Foreseeability is, rather, one of the elements of negligence; it is more appropriately attached to the issues whether defendant owed plaintiff a duty, and, if so, whether the duty imposed by the risk embraces that conduct which resulted in injury to plaintiff. *The hazard that brought about or assisted in bringing about the result must be among the hazards to be perceived reasonably and with respect to which defendant's conduct was negligent.*

(Italics ours.) Thus the harm sustained must be reasonably perceived as being within the general field of danger covered by the specific duty owed by the defendant. There is no dispute that some duty did exist on behalf of the defendant, since the danger created by the defendant's negligence did invite rescue. However, the accident suffered by the helicopter crew was too remote from the actual realm of peril created by the defendant's original negligence to come within that duty. The defendant's duty only encompassed those hazards which were legally attributable to that conduct which initiated the rescue activity. We therefore conclude that in order for the "rescue doctrine" to apply and come within the traditional formula of a tort action, the plaintiff must show that his injury was attributable to a cause which was within the reasonably foreseeable realm of peril created by the defendant's original negligence, yet outside those dangers invariably involved in flying a rescue helicopter. Under the facts of this case, it is inconceivable that the defendant owed a duty to the plaintiff to assure against a helicopter crash en route to the predetermined pickup point.

In addition to the questions of duty and foreseeability, the issue of proximate cause presents a formidable roadblock to the plaintiff's case. Regardless of whether a plaintiff is a voluntary or professional rescuer, he must show that the defendant's negligence was the proximate and legal cause of his injury. A finding of proximate cause is premised upon proof of cause in fact, as well as the legal determination that liability should attach. *King v. Seattle*, 84 Wn.2d 239, 525 P.2d 228 (1974). Cause in fact requires proof that "there was a sufficiently close, actual, causal connection between defendant's conduct and the actual damage suffered by plaintiff." *Rikstad v. Holmberg, supra* at 268. This general statement of the law is consistent with the fourth requirement of the "rescue doctrine" as enunciated in the *French* case, wherein we stated that in order for the plaintiff to recover, he must be in the process of "ef-

fecting the rescue." Furthermore, in the case of *Hawkins v. Palmer*, 29 Wn.2d 570, 188 P.2d 121 (1947), we noted on page 575 that

> to invoke the doctrine the defendant must be guilty of some negligence toward the rescuer after he, the rescuer, *has begun to attempt the rescue.*

(Italics ours.) The original negligence of the defendant, which placed him in his present imperiled predicament, must be an active factor in the course of events which ultimately culminates in injury to the plaintiff. In other words, the plaintiff's injury must not be the result of an intervening cause which came into active operation after the negligence of the defendant has ceased. We recognize that intervening causes present a confusing anomaly in the field of tort law due to the continued use of "foreseeability" as the controlling criteria for determining if a cause is truly intervening while, at the same time, holding that "foreseeability" is not an aspect of proximate cause. This is compelled simply by "sheer necessity and in default of anything better" to use as a judicial standard. W. Prosser, *Torts* § 44, at 272 (4th ed. 1971). The trier of fact must determine if an intervening act has broken the causal chain between the conduct of the defendant and the injury of the plaintiff.

> If the act itself is not foreseeable—in other words, if the act is an intervening, efficient cause—it will break the causal connection between the defendant's negligence and the plaintiff's injury.

*Qualls v. Golden Arrow Farms, Inc.*, 47 Wn.2d 599, 602, 288 P.2d 1090 (1955). "Where such intervening act or force is not reasonably foreseeable, it must be regarded as a superseding cause negating the claim of proximate or legal cause." *Cook v. Seidenverg*, 36 Wn.2d 256, 264, 217 P.2d 799 (1950); and *Mehrer v. Easterling*, 71 Wn.2d 104, 109, 426 P.2d 843 (1967).

In this case, the injuries resulted not directly from the defendant's negligence but, rather, from an intervening cause only tenuously related and totally unforeseeable, in a

causal sense, to the original condition attributable to the defendant's conduct. The record fails to show a sufficiently close, actual causal connection between the tragedy which struck the decedents and the original negligence of the defendant in causing an automobile accident. It is our opinion that neither the record actually presented, nor any inference logically attributable thereto, could, in law, lead to a result favorable to the plaintiff.

In summary, the plaintiff should be denied recovery in this case for the reasons that: (1) the decedents, as professional rescuers, did not come within the "rescue doctrine" under the facts of the case; and (2) as a matter of law, the plaintiff failed to establish a right to recovery under the traditional formula of tort law.

The judgment of the trial court is affirmed.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.