# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JEFFREY K. MARKOFF and ALICIA MARKOFF, individually and as a married couple; EDWARD C. NEWELL and TROY-LYNN NEWELL, individually and as a married couple; CHARLES MEYER and JULIE MEYER, individually and as a married couple; JOEY P. HAUGEN and MYUNG K. HAUGEN, individually and as a married couple; NATHAN A. BUCK, individually; MICHAEL S. CAMLIN and CANDACE M. CAMLIN, individually and as a married couple; RICHARD MARTELL-SCOTT, individually; and STEVE ROBERTS, individually, | DIVISION ONE<br><br>No. 77785-8-I<br><br>PUBLISHED OPINION |
| Appellants, | |
| v. | |
| PUGET SOUND ENERGY, INC., a Washington corporation; PILCHUCK CONTRACTORS, INC., a Washington corporation; and MICHELS CORPORATION, a Wisconsin corporation, | |
| Respondents. | FILED: August 19, 2019 |

DWYER, J. — Nine firefighters responded to a report of a natural gas leak.

Gas from a pipeline ignited, causing an explosion and injuring the firefighters.

The firefighters sued Puget Sound Energy Inc. (PSE) and its contractors,

alleging, among their causes of action, that negligence or recklessness in the decommissioning of the leaking pipeline was a cause of the explosion. The trial court granted PSE's motion to dismiss on the basis that the professional rescuer doctrine barred all of the firefighters' claims. We affirm.

I

On March 9, 2016, the Seattle Fire Department received a 911 telephone call reporting a natural gas leak on the 8400 block of Greenwood Avenue North in Seattle. Nine firefighters arrived on the scene at 1:09 a.m. and notified PSE of the leak at 1:11 a.m. PSE did not take action to shut off the natural gas pipeline that was the source of the leak until much later. After notifying PSE of the leak's existence, the firefighters inspected a narrow passageway between 8411 and 8415 Greenwood Avenue North and determined that the gas was escaping from a threaded coupling along a steel service line attached to the building at the 8411 address. The firefighters were unaware that gas had also escaped into and underneath this building. As the firefighters continued investigating, an unknown source ignited the gas at 1:43 a.m., causing an explosion that leveled both buildings and injured the firefighters.

A subsequent investigation by the Washington Utilities and Transportation Commission (WUTC) culminated in a report detailing the explosion's causes. WUTC found that the gas leak and subsequent explosion would not have occurred but for an improper decommissioning of the gas service line in 2004. This work had been performed by an independent contractor, Pilchuck Contractors Inc. Pilchuck had recorded the line as being cut and capped despite

2

failing to actually cut and cap the line. However, WUTC also determined that the immediate cause of the leak was external damage to the threaded coupling, likely the result of individuals storing personal property in (and using the narrow space) between the two buildings. WUTC's subsequent administrative proceeding against PSE concluded in a settlement pursuant to which PSE was to pay a $2.75 million fine, with the contingency that $1.25 million of the fine would be suspended if PSE completed inspection and remediation of its deactivated gas lines. There was no appeal from this final agency determination, and WUTC is not a party to this case.

Not long after, on May 12, 2017, Jeffrey Markoff, one of the injured firefighters, along with his wife Alicia, sued PSE, Pilchuck Contractors, and Michels Corporation, Pilchuck's parent company. The complaint alleged strict liability under the public utility statute; common law negligence, willfulness, and strict liability; outrage; infliction of emotional distress; loss of consortium; punitive damages; and a right to injunctive relief.[1] Subsequently, Markoff amended his complaint to add other injured firefighters as plaintiffs and to advocate for a change in the existing law governing liability to professional rescuers.

PSE moved to dismiss the firefighters' first amended complaint, arguing that the negligence and intentional tort claims were barred by the professional rescuer doctrine, that the injunctive relief claim was both subject to the primary jurisdiction of the WUTC's administrative proceeding and was also moot due to

---

[1] The firefighters, recognizing that Washington law does not allow for the assessment of punitive damages, nonetheless sought them under Wisconsin law. Michels Corporation is a Wisconsin corporation.

PSE's settlement with the WUTC, and that there was no independent cause of action to assert under the pertinent section of the public utility statute. The trial court dismissed all of the firefighters' common law, statutory, and strict liability claims with prejudice, but reserved ruling on the injunctive relief claim to allow for further briefing.

Applying the professional rescuer doctrine was appropriate, the trial court reasoned, because the firefighters had been called to the scene to address a gas leak, and a well-known and foreseeable danger of gas leaks is that the gas may ignite and explode. The court also accepted PSE's reasoning that the pertinent section of the public utility statute, RCW 80.04.440, did not create an independent cause of action or revive causes of action otherwise barred by an affirmative defense such as the professional rescuer doctrine. The trial court pointed to the state's workers' compensation fund as an existing system of accounting for the risk of injury assumed by professional rescuers.

Subsequently, PSE submitted the requested supplemental briefing in support of its motion to dismiss the firefighters' injunctive relief claim. The firefighters, however, did not submit supplemental briefing on the issue and instead moved to voluntarily dismiss the injunctive relief claim without prejudice. The firefighters' motion for voluntary dismissal was premised on their perception that the trial court had not, in fact, held a hearing on the injunctive relief issue or otherwise exercised its discretion to address it. The trial court disagreed, explaining,

I think it's worth noting that in my opinion I have exercised discretion on the issue that is noted for a hearing today in front of me with regard to the injunctive relief.

I heard that first hearing. I read all the briefing, and then I exercised discretion to have another hearing to delay, to say I need to do more research, I need the parties to educate me more through their briefing. . . .

And I needed that in order to go forward. And I didn't have to. That's the definition of discretion.

I could have said I will decide it. I will let you know in two weeks. I'm going to do the research. That's my discretion.

I could have said we'll decide it in 90 days, but I want more briefing. That's what I did.

I could have also just decided it right then that day in September, but I didn't. I exercised that discretion.

That hearing [on PSE's Motion to Dismiss] had started. In my view, there's no question about that. There's always shades of gray. It's nice to think of things in black and white, but the reality is between when the first brief is filed and when the final decision is entered, there's a lot of shades of gray [on] when a [CR] 41 [motion] can or cannot be filed.

In my view, this case crosses that line because we had a hearing, there was briefing on it, and I was cued up to make a decision, and I did make a decision, and I did exercise discretion, and that was to make the decision at a later date after more briefing and more education for the Court.

The trial court also gave an alternative ground for ruling in favor of PSE:

I am going to grant Puget Sound the defense's motion on the merits based on the lack of response and the fact, frankly, that I am convinced that their position is correct in light of all of the facts and law that have been presented to me over the course of two substantive hearings.

Accordingly, the trial court dismissed the firefighters' claim for injunctive relief with prejudice. The firefighters appeal from the orders of dismissal, averring that the professional rescuer doctrine should not bar their common law

and statutory tort claims and that dismissal without prejudice was the proper remedy for their injunctive relief claim.[2]

II

A

A trial court's ruling on a motion to dismiss under CR 12(b)(6) is a question of law that we review de novo. Cutler v. Phillips Petrol. Co., 124 Wn.2d 749, 755, 881 P.2d 216 (1994). A CR 12(b)(6) motion questions only the legal sufficiency of the allegations in a pleading, asking whether there is an insuperable bar to relief. Contreras v. Crown Zellerbach Corp., 88 Wn.2d 735, 742, 565 P.2d 1173 (1977). The purpose of CR 12(b)(6) is to weed out complaints where, even if that which plaintiff alleges is true, the law does not provide a remedy. McCurry v. Chevy Chase Bank, FSB, 169 Wn.2d 96, 101, 233 P.3d 861 (2010).

Under the generous standard of CR 12(b)(6), a complaint survives a motion to dismiss unless "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'" Hoffer v. State, 110 Wn.2d 415, 420, 755 P.2d 781 (1988) (internal quotation marks omitted) (quoting Orwick v. City of Seattle, 103 Wn.2d 249, 254, 692 P.2d 793 (1984)). The "court may consider hypothetical facts not part of the formal record." Hoffer, 110 Wn.2d at 420.

B

The general rule in Washington is that a person who is injured while rescuing another may recover from the party whose

---

[2] The firefighters do not appeal the trial court's ruling that strict liability did not apply.

negligence created the need for rescue. However, because professional rescuers assume certain risks as part of their profession, the general rule does not apply. When a professional rescuer is injured by a known hazard associated with a particular rescue activity, the rescuer may not recover from the party whose negligence caused the rescuer's presence at the scene.

Loiland v. State, 1 Wn. App. 2d 861, 862, 407 P.3d 377 (2017), review denied, 190 Wn.2d 1013 (2018).

The professional rescuer doctrine is based on a broad policy of assumption of risk. Professional rescuers assume certain risks inherent in their jobs and may not collect damages from those whose negligence brings about such risks. Maltman v. Sauer, 84 Wn.2d 975, 978, 530 P.2d 254 (1975). A professional rescuer may not collect damages from a negligent imperiled person when the "hazard ultimately responsible for causing the [rescuer's] injury is inherently within the ambit of those dangers which are unique to and generally associated with the particular rescue activity." Maltman, 84 Wn.2d at 979. Washington courts broadly apply this doctrine to bar recovery for anyone who is fully aware of a hazard caused by another's negligence and who voluntarily confronts the risk in exchange for compensation. Black Indus., Inc. v. Emco Helicopters, Inc., 19 Wn. App. 697, 699-700, 577 P.2d 610 (1978).

C

The professional rescuer doctrine was first recognized by our Supreme Court in Maltman, 84 Wn.2d at 979. The court therein also recognized the existence of an exception to the rule when a professional rescuer is injured by a "'hidden, unknown, [or] extrahazardous'" danger that is not inherently associated with the particular rescue activity. Maltman, 84 Wn.2d at 978 (quoting Jackson v.

7

Velveray Corp., 82 N.J. Super. 469, 198 A.2d 115, 119 (1964)). Since Maltman, the court has also recognized an exception to the doctrine that applies when "negligent or intentional acts of intervening parties not responsible for bringing the rescuer to the scene" cause the rescuer's injury. Beaupre v. Pierce County, 161 Wn.2d 568, 575, 166 P.3d 712 (2007).

We recently applied the doctrine to bar recovery when a firefighter alleged that negligence on the part of multiple parties placed him in harm's way. See Loiland, 1 Wn. App. 2d 861. Therein, Lopez, a driver, lost control of his vehicle on an icy highway with low visibility. The vehicle rolled onto its side in a ditch. A Washington State Patrol trooper stopped to assist and called for a tow truck. However, while awaiting the tow truck's arrival, the trooper observed several other vehicles slide or stall on the ice. Loiland, 1 Wn. App. 2d at 863. The trooper determined that the tow truck would be of limited use in the prevailing conditions and that waiting for one to arrive was dangerous. Hence, the trooper left the scene with Lopez, but without marking the vehicle to indicate that he had responded to the accident. Loiland, 1 Wn. App. 2d at 863-64.

Subsequently, Wynn Loiland, a firefighter, arrived on the scene in response to a 911 call. Loiland, 1 Wn. App. 2d at 864. Unaware that a trooper had already responded, Loiland had begun marking the abandoned vehicle when he was struck by a vehicle driven by Perez, who lost control on the ice. Loiland, 1 Wn. App. 2d at 864.

Loiland later filed suit against Lopez and the State, alleging that negligence on the part of Lopez, Perez, and the State (through the Department of

Transportation and the State Patrol) had caused his injuries. Loiland, 1 Wn. App. 2d at 864.

The trial court, invoking the professional rescuer doctrine, granted summary judgment to Lopez and the State. Loiland, 1 Wn. App. 2d at 864. We affirmed, reasoning that the claim was premised upon the assertions that the Department of Transportation was negligent in failing to deice the road, the State Patrol was negligent in failing to mark the abandoned vehicle, and Lopez was negligent in driving off the road—all acts or omissions that resulted in Loiland, a professional rescuer, appearing at the scene. Loiland, 1 Wn. App. 2d at 866. We held that "where the negligent acts of multiple parties cause the public safety issue that necessitates the [professional] rescuer's presence, the professional rescuer doctrine bars recovery from each of these parties." Loiland, 1 Wn. App. 2d at 867.

We also rejected Loiland's assertions that the doctrine could not apply to his claim because of intervening negligence on the part of the State.

> In Beaupre, Sutton [v. Shufelberger, 31 Wn. App. 579, 587, 643 P.2d 920 (1982)], and Ward [v. Torjussen, 52 Wn. App. 280, 287, 758 P.2d 1012 (1988)], a negligent third party injured a professional rescuer while the rescuer was responding to a public safety issue. The intervening negligence was unrelated to the act that caused the professional to be at the scene. The same is not true in this case. Neither [Department of Transportation (DOT)] nor [Washington State Patrol] injured Loiland while he was responding to a roadside accident. The agencies' alleged negligence occurred before Loiland responded to the scene. And, as discussed above, the agencies' failures were not independent of the public safety issue to which Loiland responded.
>
> Loiland asserts, however, that his claim against DOT is not based on the agency's failure to deice *before* the Lopez crash but on its continuing failure to deice *after* the Lopez crash. He contends that DOT had an ongoing duty to deice and its failure to

> deice after the Lopez crash was separate and independent from its failure to deice before the Lopez crash.
>
> Loiland provides no support for the proposition that ongoing negligence is the equivalent of independent, intervening negligence. We reject the assertion that DOT's failure to deice after the Lopez accident amounts to the independent negligence of an intervening party.

Loiland, 1 Wn. App. 2d at 869-70 (footnotes omitted). Thus, we give significance to the distinction between ongoing negligence and intervening negligence.

Here, the firefighters aver that PSE's negligence created a hidden, unknown or extrahazardous danger of the type that would bring it within the ambit of the doctrine's recognized exception. The "hidden" danger, they argue, was that the firefighters did not know of PSE's and its contractors' negligence and that gas leaks had previously been reported in the same area, or that gas was escaping not only into the alley where the firefighters could perceive it but also into an underground space beneath the 8411 building. Further, they argue that PSE's alleged negligence in failing to deactivate the line between 1:11 a.m., when it was notified of the leak, and 1:43 a.m., when the explosion occurred, created an additional unforeseeable risk.

The firefighters do not allege facts indicating that they would have responded differently to the leak than they did had they known of the improper cutting and capping of the line or the previous reports of gas leaks. Nor do they allege that they would have responded differently had they known of the pooling of gas underneath the 8411 building.

All of the dangers created by the past negligence of PSE and its contractors, created by those who misused the narrow space between the buildings, and of the gas leaking into an underground space, were part of the same hazard that the firefighters were called to the scene to address: a gas leak.[3] Injury from a fire or explosion is a risk inherent in addressing a natural gas leak, given that natural gas is known to be volatile and highly explosive. See New Meadows Holding Co. by Raugust v. Wash. Water Power Co., 102 Wn.2d 495, 501, 687 P.2d 212 (1984). The firefighters do not show that the circumstances of this leak created a "new or unknown risk" of a type not inherent in the danger of responding to a natural gas leak. Loiland, 1 Wn. App. 2d at 872.

The firefighters next allege that PSE's negligence created a risk that did not exist at the time of the firefighters' arrival at the scene: the risk that the escaped gas would build up to dangerous levels due to PSE's failure to deactivate the line after being notified of the leak. In response, PSE asserts that this claim is akin to the assertion of the firefighter in Loiland that DOT's continuing failure to deice the road after the first crash enhanced the risk of another collision such that the buildup of ice and moisture created a "new or unknown risk." 1 Wn. App. 2d at 872. That claim failed, PSE points out, because ongoing negligence does not constitute an intervening act or "independent negligence." Loiland, 1 Wn. App. 2d at 870. Moreover, the rule at

---

[3] The International Association of Fire Fighters, as amicus curiae, argues that a question of fact exists as to whether these hazards were hidden, unknown, or extrahazardous, and that the existence of this fact question precludes dismissal. For the reasons stated, the pleadings do not support the inference that these dangers were not inherent in any gas leak situation. Thus, no genuine issue of material fact exists.

issue is that "[t]he doctrine does not apply to negligent or intentional acts of intervening parties not responsible for bringing the rescuer to the scene." Beaupre, 161 Wn.2d at 575. Here, of course, PSE's negligence *was* responsible for bringing the firefighters to the scene.

In support of their argument, the firefighters rely on Kaiser v. Northern States Power Co., 353 N.W.2d 899 (Minn. 1984). Therein, eight firefighters responded to a gas explosion and notified the gas company. The gas company did not deactivate the gas line before a second explosion occurred, injuring the firefighters. Kaiser, 353 N.W.2d at 902. The Minnesota Supreme Court, determining whether the firefighters' suit against the company was barred, stated that the professional rescuer doctrine did not apply when a party's active negligence at the scene "materially enhances the risk or creates a new risk of harm." Kaiser, 353 N.W.2d at 905. Because there was a question of fact as to whether the utility's active negligence at the scene had this effect, the court ruled that denial of the utility's motion for summary judgment was called for. Kaiser, 353 N.W.2d at 906.

This decision provides no comfort to the firefighters. The opinion recognized only that the professional rescuer doctrine might not apply when a party's *active* negligence at the scene materially enhanced the risk that brought professional rescuers on site. Kaiser, 353 N.W.2d at 905. PSE's negligence after the firefighters' arrival, as the firefighters allege it to have occurred, was passive negligence (failing to shut off natural gas in the already-leaking pipe). There was no new negligent act or omission after the firefighters' arrival; PSE

simply allowed the condition that brought the firefighters to the premises to continue.[4]

In addition, the Kaiser court declined to apply the professional rescuer doctrine because it perceived there to be a question of fact as to what, if anything, the firefighters in that case would have done differently had they known of the risk of a second explosion from the still-escaping gas. 353 N.W.2d at 905-06. However, the firefighters herein do not allege that they would have addressed the situation any differently had they known that PSE would not deactivate the line within 30 minutes.

The hazards faced by the firefighters, while significant, were inherent in the risks associated with responding to a natural gas leak. The trial court correctly applied the professional rescuer doctrine in dismissing all of the firefighters' common law tort claims.

D

In the alternative, the firefighters argue for an expansion of the law. They urge that we adopt a new exception to the professional rescuer doctrine excluding from its ambit rescues resulting from willful, wanton, or reckless conduct that places a professional rescuer in harm's way. We decline to do so. The intent of the person whose actions caused the need for rescue has never

---

[4] The law in Minnesota is that "[a] landowner or person in control owes firefighters a duty 'to exercise ordinary care to avoid imperiling [them] by any active conduct.'" Kaiser, 353 N.W.2d at 905 (alteration in original) (quoting Mulcrone v. Wagner, 212 Minn. 478, 482, 4 N.W.2d 97, 99 (1942)). When such active "misconduct at the fire scene materially enhances the risk or creates a new risk of harm and causes injury to firefighters," the professional doctrine does not apply. Kaiser, 353 N.W.2d at 905. We can decide this case without deciding if the law in Washington is identical.

13

been a relevant inquiry in determining whether a professional rescuer assumed a risk. Washington courts have not looked to the conduct of a person in creating a hazard to establish whether the professional rescuer doctrine applies. Rather, our courts have always analyzed whether the professional rescuer assumed a risk inherent in the nature of the rescue at issue. Maltman, 84 Wn.2d at 979; Black Indus., 19 Wn. App. at 699.

The firefighters point to Ballou v. Nelson, 67 Wn. App. 67, 834 P.2d 97 (1992), to support their advocacy for an intent exception. Therein, we held that the professional rescuer doctrine did not bar police officers from recovering against two hotel patrons who assaulted them. Ballou, 67 Wn. App. at 70. While the police officers had been dispatched to detain these patrons, the assault was an independent act of active misconduct that occurred after the officers' arrival. Ballou, 67 Wn. App. at 69. Further, the officers did not arrive at the scene to rescue the patrons but, rather, to restrain them from committing further acts of assault against others at the hotel. Ballou, 67 Wn. App. at 73. Thus, we ruled, the professional rescuer doctrine did not apply. This is in sharp contrast to the situation herein, in which the firefighters *were* called to the scene to protect others from danger, and were not injured as a result of independent acts of active misconduct. Ballou does not militate in favor of the adoption of the new proposed rule.

The firefighters also point to authority from other states in which an intent exception is recognized, chiefly a Louisiana Court of Appeals case, Chinigo v. Geismar Marine, Inc., 512 So. 2d 487 (La. Ct. App. 1987). Therein, a sheriff's

14

deputy responded to a report that a tank truck was leaking unknown fluid onto a road. Chinigo, 512 So. 2d at 488. The truck did not possess the required placard designating the substance being transported, and its driver did not inform the deputy that the fluid was a volatile and toxic chemical. Chinigo, 512 So. 2d at 489. The deputy, experiencing serious side effects of exposure to the chemical, sued the trucking company, which raised the professional rescuer doctrine as a defense. Chinigo, 512 So. 2d at 489-90. The court held that the risk confronted by the deputy, created by improper handling of a hazardous chemical in a wanton manner, was "extraordinary and one which was beyond the training and experience of [the deputy] to remedy," precluding application of the professional rescuer doctrine. Chinigo, 512 So. 2d at 492. This is inapposite to the case before us for the simple reason that the explosion was not an unanticipated risk of the gas leak.

Further, to the extent that the Louisiana court's recognition of an exception was not based on the hidden, unknown, or extrahazardous danger created by the unknown fluid—a situation already accounted for in our state's law—it was based on the desire to impose punitive damages. Chinigo, 512 So. 2d at 491. This is not a concern in Washington. We decline to adopt a new exception to the professional rescuer doctrine employing an intent component.

III

The firefighters next assign error to the trial court's dismissal of their claims against all three defendants for liability under RCW 80.04.440. The trial court dismissed these statutory liability claims on the basis that RCW 80.04.440

15

does not create a private cause of action for the firefighters to assert. This subsection of Washington's public utility statute provides that:

> In case any public service company shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by any law of this state, by this title or by any order or rule of the commission, such public service company shall be liable to the persons or corporations affected thereby for all loss, damage or injury caused thereby or resulting therefrom, and in case of recovery if the court shall find that such act or omission was willful, it may, in its discretion, fix a reasonable counsel or attorney's fee, which shall be taxed and collected as part of the costs in the case. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation.

RCW 80.04.440.

"Significantly, liability under [RCW 80.04.440] is *predicated* upon a finding of a violation of law or safety regulation." Zamora v. Mobil Corp., 104 Wn.2d 199, 209, 704 P.2d 584 (1985). Neither party disputes the requirement of a predicate violation; however, the firefighters aver that the statute creates a private cause of action separate and independent of their common law claims.

Employing a plain language reading, the statute does nothing more than preserve causes of action for private claims related to utility misconduct while adding the potential for recovery of attorney fees by successful claimants.[5] It

_____

[5] RCW 80.04.440 supports causes of action against "any public service company." "Public service company" is defined, for purposes of the statute, as "every gas company, electrical company, telecommunications company, wastewater company, and water company." RCW 80.04.010(23). In turn, a "[g]as company" is defined inclusively as "every corporation, company, association, joint stock association, partnership and person, their lessees, trustees or receiver appointed by any court whatsoever, and every city or town, owning, controlling, operating or managing any gas plant within this state." RCW 80.04.010(14). Independent contractors performing maintenance work on behalf of a gas company are not included in this definition.

The firefighters' first amended complaint did not allege that either Pilchuck Contractors or Michels Corporation was a public service company as would be necessary to bring them within the ambit of the statute. Instead, it stated that Pilchuck "conducted pipeline maintenance and

16

does not allow for such claims to be asserted free of the limitations to which they are subject when otherwise asserted. See Fisk v. City of Kirkland, 164 Wn.2d 891, 896, 194 P.3d 984 (2008) (cause of action pursuant to RCW 80.04.440 not viable in the absence of underlying duty on part of utility); Citoli v. City of Seattle, 115 Wn. App. 459, 479-80, 61 P.3d 1165 (2002) (utility's alleged violation of regulation requiring minimization of service interruptions did not support RCW 80.04.440 claim due to city ordinance limiting utility's liability).

Hence, a party seeking the benefit of RCW 80.04.440 must demonstrate that the underlying claim is viable and not subject to an affirmative defense.[6] This the firefighters have not done. They assert that the statute's lack of reference to the professional rescuer doctrine implies that said doctrine does not apply, ignoring the fact that the statute's enactment predated Maltman by 14

---

other general contracting business throughout the State on behalf of PSE and others," and that Michels "is a company incorporated in the State of Wisconsin and bought Pilchuck Contractors in or around 1999 to conduct business in Washington State."

In their reply brief, the firefighters point to RCW 80.04.010(15), defining "[g]as plant" to include "all real estate, fixtures and personal property, owned, leased, controlled, used or to be used for or in connection with the transmission, distribution, sale or furnishing of natural gas, or the manufacture, transmission, distribution, sale or furnishing of other type gas, for light, heat or power." They contend that, because Pilchuck was contracted by PSE to maintain the "fixture" of the pipeline, it was in fact "controlling, operating or managing any gas plant." However, even taking all of the firefighters' allegations as true, as we must, they do not raise the inference that Pilchuck was "controlling, operating or managing" a gas plant except on behalf of PSE—as explicitly stated in the firefighters' first amended complaint. Thus, Pilchuck was and is not a "gas company" as would be necessary to make it a "public service company" to bring it within the meaning of the statute.

Because the pleadings did not support an inference that Pilchuck was a public service company, they in turn do not support the inference that Michels, the parent company of Pilchuck, could be held liable under the utility statute. Thus, dismissal of the RCW 80.04.440 claim against Pilchuck and Michels was proper even if the statute did create the firefighters' proposed independent cause of action.

[6] Nowhere in their opening or reply briefs do the firefighters point to the specific WUTC regulations, the violation of which would give rise to a cause of action under RCW 80.04.440. An enumeration of these regulations is contained in their first amended complaint. However, to the extent that the firefighters rely on specific findings of the WUTC to support their cause of action, they are asserting a claim "involving" an order of the WUTC without serving notice to the same in contravention of RCW 80.04.420.

years. Nothing in the statute's language evinces an intent to render inapplicable otherwise applicable affirmative defenses. The trial court did not err in dismissing the firefighters' claims pursuant to RCW 80.04.440.

IV

The trial court gave alternative reasons for dismissal of the firefighters' injunctive relief claim with prejudice: first, that the firefighters had not responded to the assertions contained in PSE's motion to dismiss that claim and, second, that there was no reason to grant a voluntary dismissal *without* prejudice. The trial court did not specify the assertion it was adopting in granting PSE's motion to dismiss, stating at oral argument only that the motion would be granted "on the merits based on the lack of response and the fact, frankly, [because] I am convinced that their position is correct in light of all of the facts and law that have been presented to me over the course of two substantive hearings." We may affirm a trial court ruling on any ground supported in the record. LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

"One who seeks relief by permanent injunction must show: (1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in, or will result in, actual and sustained injury to him." Tyler v. Van Aelst, 9 Wn. App. 441, 443, 512 P.2d 760 (1973) (citing Port of Seattle v. Int'l Longshoremen's & Warehousemen's Union, 52 Wn.2d 317, 319, 324 P.2d 1099 (1958)). "The complainant must make out a *prima facie* case." Isthmian S. S. Co. v. Nat'l Marine Eng'rs' Beneficial Ass'n, 41 Wn.2d 106, 118, 247 P.2d 549 (1952). "'An

injunction will not issue to protect a right not in esse and which may never arise.'" State ex rel. Hays v. Wilson, 17 Wn.2d 670, 673, 137 P.2d 105 (1943) (quoting 32 C.J. Injunctions § 14, at 35 (1923)).

The firefighters' first amended complaint gives the following basis for requesting an injunction:

> 24. Injunctive Relief. Based on the paragraphs set forth and alleged above, and in light of their reckless and wanton misconduct, Defendant PSE should be enjoined under RCW 7.40 et seq. and Washington law be required to perform a comprehensive inspection of its Washington State gas pipes, especially abandoned pipes, and engage in immediate remediation to protect the public from a grave foreseeable harm.

The "paragraphs set forth and alleged above" asserted rights of action arising from PSE, Pilchuck and Michels's alleged negligence. The trial judge properly dismissed the substantive claims on which the request for injunctive relief was based. At that point, the firefighters no longer had a right that could be vindicated or protected by the injunction. In short, an injunction is a remedy, not an independent cause of action. Dismissal with prejudice was proper.

Affirmed.

_Dwyer, J._

WE CONCUR:

_Andrus, J._

_Schindler, J._

19