IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ROVER STAY OVER, INC., a Washington State corporation<br><br>Appellant,<br><br>v.<br><br>WHATCOM COUNTY, a municipal entity,<br><br>Respondent. | No. 87904-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Charmae and Ken Scheffer own and operate Rover Stay Over, Inc., a canine boarding and kennel facility in Whatcom County. In 2020, the United States Department of Homeland Security, Customs and Border Protection (CBP) issued a solicitation for canine boarding services. Three businesses applied, including Rover and R&R Kennels, LLC. During bid review, CBP contacted Whatcom County's Buildings and Code Department to confirm if the applicants complied with local permitting and zoning laws. The County stated that Rover and R&R Kennels had conditional use permits (CUPs) that allowed them to operate kennels in their respective locations. In fact, R&R Kennels's CUP expired some years prior. CBP awarded the contract to R&R Kennels. Rover filed a bid protest with the United States Government Accountability Office (GAO), which was ultimately dismissed. Rover sued Whatcom County for negligence and tortious interference with contract or business expectancy. The

trial court granted summary judgment in favor of Whatcom County. Rover appeals. Finding no error, we affirm.

FACTS

Charmae and Ken Scheffer own and operate Rover Stay Over, Inc. kenneling services at their facility in Lynden, Washington. The facility is in an agricultural (AG) zone. Before acquiring the facility, the Scheffers met with Whatcom County to discuss their plans to operate a commercial dog kennel. Whatcom County informed Rover that commercial dog kennels are prohibited in an AG zone, and the County recommended they look at properties in a rural zone instead. Nonetheless, Rover acquired the facility in Lynden and operated a kennel and boarding business.

In May 2014, the County issued Rover a notice of violation, stating that Rover's kennel violated Whatcom County zoning ordinance, Title 20, and the international residential/building code. The violation observed (1) that the existing structure was not permitted for kenneling, (2) a new unpermitted structure was in the process of being built, and (3) a chain-link fenced area where six to eight Homeland Security vehicles were stored until dispatched for what appears to be K-9 patrol, which is a prohibited use in the AG zone.[1] A month later, the County posted a stop work order on Rover's new unpermitted structure, but the County and Rover agreed that a stop work order would not be posted on the existing

---

[1] The violation detailed that the existing structure was legally permitted to be used as a single story storage or agriculture building for personal use only. The violation also stressed that storing CBP vehicles and operating a kennel were not allowable uses in an AG zone.

structure.  Later in 2014, Rover contracted with CBP to provide canine kenneling services for up to five years.  In 2016, the County approved Rover's application for a conditional use permit (CUP) to kennel CBP canines as a public community facility, but this did not allow Rover to perform kennel services in an AG zone.  In 2018, the County amended its zoning ordinance to allow kenneling services in the AG zone with a CUP.  In August 2020, Rover was approved to operate as a commercial kennel, and Rover had no other outstanding regulatory issues.

During Rover's contract with CBP, Rover encountered several issues with CBP Officer Escobar, whose canine was boarded at Rover.  In 2016, Rover notified CBP of conflicts that the owner had with Officer Escobar, including that Officer Escobar claimed that his canine was injured at Rover, that he violated kennel rules by letting his canine fence fight,[2] and that he accused Rover of letting his canine fight with other dogs.  Rover also had security footage of Officer Escobar letting the air out of another CBP officer's vehicle.  Rover notified CBP that because of these incidents, Officer Escobar was not allowed on Rover's property.  In response to Rover's concerns, CBP moved Officer Escobar's canine to another facility in the area, R&R Kennels.  Since the canine was moved to a different kennel, CBP notified Rover that it reduced Rover's contract.

In June 2020, CBP notified Rover that it would not exercise the option to extend the contract into its fourth year, and the contract ended September 2020.  Also in 2020, shortly before CBP and Rover's contract expired, CBP issued

---

[2] Fence fighting is when dogs show aggression toward each other through a barrier.

another solicitation for canine services. Three kenneling services bid on the solicitation, including Rover and R&R Kennels. In August 2020, CBP contacted the County's planning and development services to confirm if the applicants complied with local permitting and zoning laws. The County stated that Rover and R&R Kennels had CUPs that allowed them to operate kennels in their respective locations. CBP awarded the contract to R&R Kennels. Rover filed a bid protest with the United States Government Accountability Office (GAO), claiming that R&R Kennels did not have a CUP and was not permitted to conduct kenneling services. While assessing Rover's appeal, CBP's Office of the Chief Counsel (OCC) contacted the County requesting it provide written confirmation that R&R Kennels had the proper permits to board canines. GAO ultimately dismissed Rover's protest.[3] In September 2021, Royce Buckingham, Senior Civil Deputy for Whatcom County, sent CBP a letter clarifying R&R Kennels' permit status. The letter stated that R&R Kennels had been operating as a legal, pre-existing nonconforming use under the Code, and was in the process of filing for a CUP.

Rover sued the County in Snohomish County Superior Court for negligence and tortious interference with contract or business expectancy, which resulted in the termination of Rover's relationship and business with CBP. The

---

[3] In dismissing Rover's protest, GAO concluded that "whether the awardee complies with the license and permit requirements is a matter of contract administration, which we will not review." Rover also alleged that CBP engaged in bad faith, but GAO found that Rover did not provide any evidence to support its claim.

trial court granted summary judgment to the County, dismissing all of Rover's claims. Rover appeals.

ANALYSIS

Standard of Review

"We review summary judgments de novo." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Locke v. City of Seattle*, 162 Wn.2d 474, 483, 172 P.3d 705 (2007) (alteration in original) (quoting CR 56(c)). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins.*, 164 Wn.2d at 552. This court "view[s] all facts and reasonable inferences in the light most favorable to the nonmoving party." *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

Rover indicates that because the trial court did not identify why it granted the County's motion, it had to address all of its "relied upon justifications." CR 56 does not require a court to explain its basis for granting or dismissing a motion. The court's order granting the motion for summary judgment listed the documents and evidence considered in granting the motion.[4] Given that our

---

[4] In the order granting summary judgment, the court considered: (1) the plaintiff's complaint, (2) answer and affirmative defense of Whatcom County to plaintiff's complaint, (3) defendant Whatcom County's motion for summary judgment, (4) memorandum in support of defendant Whatcom County's motion for summary judgment, (5) declaration of Amy Keenan, (6) Declaration of Quinn N. Plant, (7) plaintiff's response brief and exhibits, and (8) defendant's reply brief.

review is de novo, it is appropriate for the parties to address any basis to grant or deny the summary judgment motion put forth by either party.

Public Duty Doctrine

Rover contends that the trial court erred when it granted the County's motion for summary judgment because the public duty doctrine does not apply. Rover also asserts that its claim is not based upon a duty arising out of a statute or the violation of an ordinance. The County maintains that the public duty doctrine applies because the enforcement of zoning is unique and exclusive to the government.

Whether the public duty doctrine applies is a question of law, which is reviewed de novo. *Babcock v. Mason County Fire Dist. No. 6*, 144 Wn.2d 774, 784, 30 P.3d 1261 (2001).

Under the public duty doctrine, "governmental entities may be held liable only 'to the same extent as if they were a private person or corporation.' " *Norg v. City of Seattle*, 200 Wn.2d 749, 758, 522 P.3d 580 (2023) (emphasis omitted) (quoting RCW 4.96.010(1)). "The public duty doctrine provides 'a mechanism for focusing upon whether a duty is actually owed to an individual claimant rather than the public at large.' " *Norg*, 200 Wn.2d at 758 (quoting *J&B Dev. Co. v. King County*, 100 Wn.2d 299, 304-05, 669 P.2d 468 (1983)). "If the duty that the government allegedly breached was owed to the public at large, then the public duty doctrine applies; if the duty was owed to an individual, then the public duty doctrine does not apply." *Norg*, 200 Wn.2d at 758. "The public duty doctrine applies only to claims based on an alleged breach of 'special governmental

obligations [that] are imposed by statute or ordinance.' " *Norg*, 200 Wn.2d at 758 (alteration in original) (quoting *Beltran-Serrano v. City of Tacoma*, 193 W.2d 537, 549, 442 P.3d 608 (2019)).

There are four exceptions to the public duty doctrine: "(1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship." *Norg*, 200 Wn.2d at 758. "A special relationship imposing an actionable duty to perform arises between the plaintiff and a government entity when '(1) there is a direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public official, which (3) gives rise to justifiable reliance on the part of the plaintiff.' " *Cummins v. Lewis County*, 156 Wn.2d 844, 854, 133 P.3d 458 (2006) (internal quotation marks omitted) (quoting *Beal v. City of Seattle*, 134 Wn.2d 769, 785, 954 P.2d 237 (1998)).

Rover claims that the County was not performing a special governmental obligation when it communicated with CBP because it was not in an active permitting or enforcement process.[5] Under Whatcom County Code (WCC) 20.04.035, the County's "department of planning and development services is responsible for the administration of [Whatcom County zoning ordinance]." The communication between the County and CBP was specifically about the status of a permit. The code does not limit the department's communication exclusively to parties actively involved in permit processes. Because the County's Planning

---

[5] Rover also asserts that the County has no obligation to answer questions from a third party about a permit status. This argument is not supported by the Whatcom County Code.

and Development Services is statutorily obligated to administer the zoning code and shall "act as a coordinating agent to ensure that the regulatory process is expeditious," the public duty doctrine applies. WCC 20.04.035.

For the County to have a duty to Rover under the public duty doctrine, Rover must meet an exception. Here the most relevant exception is special relationship. Rover sent a letter to the County about its concern that R&R Kennels did not have a CUP. Specifically, Rover inquired for a code interpretation on:

> whether the boarding of CBP detector dogs, including the provision of gated, secure parking for CBP vehicles and CBP officers' personal vehicles, can be conditionally permitted under WCC 20.36.156 and WCC 20.40.165, or whether the use must go through conditional permitting under WCC 20.36.151 and WCC 20.40.151 as a public facility.

Rover's correspondence with the County meets the direct contact element of a special relationship.

Next, our Supreme Court has held that "[t]he plaintiff must seek an express assurance and the government must unequivocally give that assurance." *Babcock*, 144 Wn.2d at 789. In the County's formal interpretation addressing Rover's concerns about R&R Kennels, it clarified its zoning laws about boarding CBP dogs. Particularly, the County addressed "whether CBP dogs must be boarded in a public and community facility" or "at a kennel that is allowed to board 'animals' or 'domestic animals.' " The County's interpretation said, "[N]o. CBP dogs may be boarded at a public/community facility or at a kennel that is

8

allowed to board 'animals' or 'domestic animals.' "  Additionally, in the formal report, the County clarified that

> [b]oarding of CBP dogs, as well as other dogs or animals used for a public safety purpose including police and search and rescue dogs, may be considered under the public and community facility use. Dogs boarded under the public and community facility use must be owned by a public agency (CBP, Sheriff's Department, State Patrol, etc.).

CBP dogs may also be boarded in zones where "animal" or "domestic animal" kennels are allowed.  CBP dogs are not household pets.  CBP dog kennels are not allowed in the AG zone unless they are a public/community facility.  In the County's formal code interpretation, it did not make any unequivocal assurances or provide incorrect information.  Therefore, no unequivocal assurance or incorrect information was provided that Rover could have justifiably relied upon.  We conclude that the County did not have a duty to Rover under the public duty doctrine's special relationship exception.

Negligence

  a.  *Common Law Duty of Care*

Although the public duty doctrine applies, Rover asserts that its negligence claim is based in a common law duty of care.  Specifically, Rover claims that Whatcom County owed a duty in the County's individual capacity to disseminate accurate information in dealing with CBP when it voluntarily answered CBP's inquiry.[6]  In response, the County contends that its

---

[6] Rover contends that the County committed governmental misfeasance when it voluntarily provided information to CBP about the permit status of the solicitation applicants.  "Misfeasance involves active misconduct resulting in positive injury to others."  *Robb v. City of Seattle*, 176 Wn.2d 427, 437, 295 P.3d

communication to CBP did not give rise to a duty.

We review de novo the issue of whether an actionable duty was owed to the plaintiff. *Munich v. Skagit Emergency Commc'n Ctr.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012).

Under common law, " 'every individual owes a duty of reasonable care to refrain from causing foreseeable harm in interactions with others.' " *Norg*, 200 Wn.2d at 763 (quoting *Beltran-Serrano*, 193 Wn.2d at 550). "While there is generally no duty to prevent a third person from intentionally harming another, a duty arises when 'a special relationship exists between the defendant and either the third party or the foreseeable victim of the third party's conduct.' " *H.B.H. v. State*, 192 Wn.2d 154, 168, 429 P.3d 484 (2018) (quoting *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 43, 929 P.2d 420 (1997)). Courts find that a special relationship exists when "(1) the defendant has a special relationship with the third person that imposes a duty to control that person's conduct or (2) the defendant has a special relationship with the victim that gives the victim a right to protection." *H.B.H.*, 192 Wn.2d at 168-69. "Common examples of § 315(b)[7] protective special relationships include the relationships between schools and their students, innkeepers and their guests, common carriers and their passengers, and hospitals and their patients." *H.B.H.*, 192 Wn.2d at 169.

While both parties agree that Amy Keenan, a County planner, misstated that R&R Kennels had a CUP, as discussed *supra*, no special relationship

212 (2013). Rover alleges the County made negligent communications to a third party which is not a direct act of harm. We decline to review this argument.

[7] *Restatement (Second) of Torts* § 315(b) (Am. Law Inst. 1965).

existed between the County and Rover. In addition, the duty of care requires that an individual refrain from causing foreseeable harm.[8] Here, when the County told CBP that Rover and R&R Kennels had the required permits,[9] the County could not reasonably foresee whether Rover would be harmed. CBP did not mention to the County the weight or impact that the County's information would have on the bids. Based on CBP's question solely about permit compliance, the County had no reason to believe that the information it gave CBP would have negative consequences for Rover. We find no error.

b. *Causation*

Rover asserts that the trial court erred when it granted summary judgment based on a lack of evidence regarding causation. Specifically, Rover stresses that a fact finder could conclude that CBP desired and intended to award the "contract to a fully permitted operation." The County contends that Rover did not provide competent evidence of causation. We determine that no evidence exists from which a fact finder could find causation because (1) CBP's solicitation did not require proof of permits, (2) the solicitation evaluated multiple factors, and (3)

---

[8] A breach of the duty of care also requires intent. During a deposition, Keenan was asked what her goal was in answering CBP's questions. Keenan answered, "to respond to the questions that were asked." Keenan was then asked, "was [your goal] to respond accurately to the questions that were asked?" She replied, "[t]o my knowledge, yes." No evidence suggests that Keenan had ill or malicious intent when she informed CBP that R&R Kennels had a valid permit to board CBP canines.

[9] The County claims that when CBP reached out, both Rover and R&R had been issued CUPs and neither kennels had complied with the CUP conditions. This information was not before the trial and therefore we decline to review this argument.

CBP stated that it only relied on the County's statement to continue R&R Kennels' contract after the contract was awarded.

"For legal responsibility to attach to the negligent conduct, the claimed breach of duty must be a proximate cause of the resulting injury." *LaPlante v. State*, 85 Wn.2d 154, 159, 531 P.2d 299 (1975). A defendant's negligence is a proximate cause of the plaintiff's injury only if such negligence, unbroken by any new independent cause, produces the injury complained of. *Maltman v. Sauer*, 84 Wn.2d 975, 982, 530 P.2d 254 (1975).

Rover's assertion that CBP intended to contract only with a business that was fully permitted at the time of application is at best speculative because CBP did not require applicants to have valid permits at the time of application submission. The statement of work (SOW) issued by CBP states that "the contractor shall hold and maintain applicable licenses and permits throughout the duration of the contract." When Rover appealed CBP's decision, GAO found that the solicitation "did not require firms to provide evidence of its permits or certifications as part of their proposal." Additionally, the language references the contractor, not an offeror or applicant.

Even if CBP had intended to contract with a fully permitted facility, Rover failed to show causation because CBP considered multiple factors in awarding the contract. GAO's decision detailed that the solicitation had three evaluation factors: technical and management approach, past performance, and price.[10]

---

[10] The order of importance of the factors, from most important to least, were as follows: (1) technical and management approach, (2) past performance,

The technical management approach factor had four subfactors, including: "(1) [a] strategy to satisfy the requirements of the statement of work; (2) [the] capability and methodology of management to provide full range of required services; (3) key personnel qualifications and experience – staffing plan, and (4) . . . [the ability to demonstrate that the] facility is capable and equipped to handle required services." Regarding the past performance factor, the incidents involving Officer Escobar may have fallen into that category as a factor in Rover's application. Concerning the price factor, the GAO's decision found that R&R's proposal represented the best value. Although technical management approach is the most important factor, it is unclear how the other factors were evaluated, how the technical management subfactors were weighed, and how much weight was given to permit compliance.

Lastly, Rover asserts that CBP relied on the County's statements on R&R Kennel's permit status because CBP stated in an e-mail to Rover that "[CBP] will continue with our contract [with R&R Kennels] unless the county tells us otherwise." The timing of CBP's e-mail does not support the claim that CBP relied on the County's permit information in its decision to award the contract to R&R Kennels. Rover's GAO decision, in which GAO concluded no error occurred in awarding R&R Kennels, was finalized in October 2020. CPB's e-mail to Rover was sent in January 2021. The County then sent CPB a letter on R&R Kennels's permitting status in September 2021. Even if the e-mail shows CPB's

_____

and (3) price ("When combined, technical and management approach and past performance were significantly more important than price.").

13

reliance on the County, it does not show that the reliance existed at the time of the contract award. Causation is speculative and too attenuated; therefore, we find no error in the court's dismissal of the negligence claim.

Tortious Interference with Business Expectancy

Rover asserts that the court erred in dismissing its tortious interference with business expectancy claim because evidence was available that a fact finder could conclude that the County's interference was intentional. Rover contends that a fact finder could find that the County tortiously interfered through: (1) CBP's explicit statements that it relied upon the County's misstatement, (2) CBP's statement that it would continue its contract "unless the County tells us otherwise," (3) Keenan's statement that she understood CBP relied upon the permit information from the County, and (4) evidence that CBP desired and intended to award a fully permitted kennel. The County contends no evidence exists that it intentionally interfered with Rover's business expectancy.

"To establish a prima facie case of tortious interference with a business expectancy," the plaintiff must show " '(1) the existence of a . . . [valid] business expectancy; (2) that [the defendant] had knowledge of that [expectancy]; (3) an intentional interference inducing or causing . . . termination of the . . . expectancy; (4) that [the defendant] interfered for an improper purpose or used improper means; and (5) resultant damage.' " *Greensun Grp., LLC v. City of Bellevue*, 7 Wn. App. 2d 754, 767-68, 436 P.3d 397 (2019) (alteration in original) (quoting *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 350, 144 P.3d 276 (2006)). "Intentional interference requires an improper objective or the use

14

of wrongful means that in fact cause injury to the person's contractual relationship." *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). The interference is intentional " 'if the actor desires to bring it about or if [they] know[] that the interference is certain or substantially certain to occur as a result of [their] action.' " *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc.*, 114 Wn. App. 151, 158, 52 P.3d 30 (2002) (quoting *Restatement (Second) of Torts* § 766B, cmt. d).

### Business Expectancy

The County does not contest that Rover had a business expectancy associated with CBP or that the County had knowledge of Rover's business expectancy. We find that the first two elements of tortious interference, existence of business expectancy and defendant's knowledge of that expectancy, are met.

### Intentional Interference

Rover asserts that CBP intended to contract with a fully permitted operation, citing CBP's e-mail to the County that stated, "CBP wants to ensure that our K-9s are placed in a properly permitted kennel to avoid any disruption to their boarding down the road." But Rover's assertion is not supported by the evidence. In the GAO's decision about Rover's petition, it stated that evidence of permits or certifications were not a SOW requirement. Although permits are required for the awarded contractor, GAO did not state that CBP intended to contract with a fully permitted operation. Additionally, the evidence of Rover's prior CBP contract while not fully permitted does not support Rover's claim.

15

Rover stresses Buckingham's refusal to provide corrected information to CBP and asserts that it reached out to Buckingham, requesting that the County correct the misinformation that it gave to CBP. Rover claims Buckingham did not respond to the request. However, in Buckingham's deposition, he stated that he corrected the information in the 2021 letter sent to CBP.

Rover maintains that Buckingham's letter was intentional interference with Rover's business expectancy because the letter was based on an informal assessment. Buckingham's letter to CBP about R&R Kennels stated the permit history of the operation. Although R&R Kennels was unpermitted at the time of the letter, Buckingham stated that R&R Kennels was working with the County to meet County requirements. Buckingham and Bob Carmichael, owner of R&R Kennels, exchanged several e-mails about the letter before it was sent to CBP. The e-mails do not mention Rover or any intent to interfere with Rover's business. No evidence shows that Buckingham intentionally conveyed information about R&R Kennels for the purpose of interfering with Rover's business expectancy.[11] Rover does not meet the intentional interference element.

### Improper Purpose or Improper Means

Even if the intentional interference element is met, Rover cannot show that the County acted with an improper purpose or improper means. Rover highlights

---

[11] In Buckingham's disposition, he was asked if he signed the letter to assist R&R Kennels to maintain its CBP contract. Buckingham responded, "I don't think it's a motive to assist. It's to clarify our position. . . . We don't have an interest in who gets the contract."

Keenan's testimony to support that she knew CBP relied on the information, and nonetheless gave false information.[12]  But Keenan's deposition does not indicate that she intentionally gave false information.  Keenan stated that her goal was to respond accurately to the  questions to the best of her knowledge.  Keenan's statement that she understood that CBP relied on the information does not confirm that she had an improper purpose or means.

Rover fails to provide evidence that the County, with improper purpose or improper means, interfered with Rover's business expectancy.

We affirm.

_____

WE CONCUR:

_____, ACJ  _____

---

[12]  Additionally, Rover contends that the County's enforcement actions against Rover were handled "differently and more aggressively than normal," and the County's actions show it intentionally interfered with Rover's business expectancy.  However, in the County's enforcement action against Rover, the County did not order Rover to shut down business.  Rather, the County allowed Rover to continue its boarding and kennel operation while the Scheffers navigated the permit process.  The County's enforcement action with Rover is consistent with its enforcement against R&R Kennels, where it did not shut down R&R Kennels because of lack of permits.  The facts do not support Rover's assertion.